*Redfield*, for plaintiff.

*J. Mattocks*, for defendant.

———————⟨∙⟩———————

JOHN S. ROBINSON *vs.* HEMAN SWIFT, Administrator of Mo- ses ROBINSON, JUN. (In Chancery.)

The court of probate has jurisdiction over questions of advancement by an ancestor to his heir, and to decide whether the heir has discharged or renounced his right in the distribution of his ancestor's estate. And the decree of a probate court upon such a question, affirmed by the Supreme Court on appeal, is conclusive both at law and in equity.

The infancy of a party in interest when such decree is passed, if his guardian was du- ly notified, and prosecuted or defended in his behalf, will furnish no ground, even in equity, for opening the decree or disturbing the distribution.

The orator, as one of the heirs at law to the late Gov. Moses Robinson, preferred his bill against the administrator of the estate of the late Moses Robinson, Jun., setting forth in substance the following facts :—That on the 7th day of July A. D. 1786, Mo- ses Robinson, jun., having attained his full age of twenty-one years, and being desirous to be advanced and set up in life, applied to his father, the said Moses Robinson, sen. and requested that he would then advance to him his full proportion of his estate—That the said Moses Robinson, sen., after consulting with his other chil- dren, accordingly deeded to said Moses Robinson, jun. a farm worth £500, and gave him a yoke of oxen, and a horse, where-

BENNINGTON, upon the latter executed the following receipt or agreement:—
February, 1830.

Robinson vs. Swift.

"Bennington, July 7th, 1786.    Received of my honoured father, "five hundred pounds in a farm, together with one yoke of oxen "and a mare, which by agreement is to be in full of my share of "my father's estate; provided I am not called upon to be at any "trouble about said estate.

(Signed)          *Moses Robinson, Jr.*"

That the said Moses Robinson, sen. had six children, all of whom were sons, and all survived him except Nathan Robinson, father of the orator—That Moses Robinson, sen. died intestate, on the 28th day of May, 1813, leaving a considerable estate—That Moses Robinson, jun., having never been called on to be at any trouble about his father's estate, claimed and received an equal share of said estate with the other heirs, being $7693,69, in violation of his said agreement—That Moses Robinson, jun. had also deceased, and the defendant was administrator of his estate. The orator prayed a decree upon the defendant, as such administrator, to refund to him one fifth part of the sum so received, and also for general relief.

The defendant pleaded in bar, that at a probate court holden at Bennington for the district of Bennington, on the eighth day of May, A. D. 1815, it was decreed by said court, that the said Moses Robinson, jun. was entitled as heir to one sixth part of the estate of said Moses Robinson, sen., deducting therefrom the sum of $1786.68, which said court did then and there decree had been received by said Moses, jr. by way of advancement;—averring that said sum so decreed to be deducted was on account of the sum contained in said receipt or agreement in the bill set forth—That afterwards at a probate court holden at Bennington aforesaid on the 1st Monday of July, 1815, the orator, by his guardian, Jerusha Robinson, appealed from the decree aforesaid to the Supreme Court, then next to be holden in and for the county of Bennington, which appeal was duly entered and prosecuted in said Court; and at the term of said Court holden on the 3d Tuesday of January, A. D. 1818, it was considered and adjudged by said Court, that said decree of said probate court be in all things affirmed.— And averring that in and by said judgement of said Supreme Court, the same matters and things were adjudged and determined, for which the orator now seeks relief.

To this plea the orator demurred, assigning for cause—

1. That the grounds of relief disclosed by his bill were matters of equity jurisdiction, upon which a court of law had not competent powers to decide.

BENNINGTON
*February,*
1830.

Robinson
*vs.*
Swift, admr.

2. That during the pendency of the proceedings mentioned in the plea the orator was an infant.

*The orator pro se* in support of the demurrer.

This case presents three questions for the decision of the court.

1. Has this court jurisdiction?

2. If it has, is this such a contract that a court of equity would decree its specific performance?

3. Is the judgement at law in favor of the defendant a bar to this suit?

1. The defendant by pleading in bar to the merits of the bill, has waived all exceptions to the jurisdiction.—2 *Caines' C. in Error*, 40, 56. It is sufficient to give a court of equity jurisdiction, that the remedy at law is doubtful.—2 *Caines' C. in Error*, 54. To entitle the probate court to the exclusive cognizance of this suit, the remedy must be as effectual and complete as in a court of equity.—*Mit. Pl.* 183; 1 *Vern.* 212.

2. A court of equity will decree the specific performance of a contract for an expectancy or hope of succession, if made for a valuable consideration, though no damages could be recovered at law for the nonperformance of it.—*Fearne on Rem.* 550; *Newl. Con.* 110; 1 *Fonb. Eq.* 215, *note h*; 2 *P. Wms.* 182–7; 2 *Ib.* 191; 1 *Ves.* 411; 1 *Wash. R.* 136; *Hardw. C.* 382; 1 *Mad.* 97.— At law a sale by an heir of his hope of succession is void.—3 *T. R.* 88; *Shep. T.* 239; *Perkins*, 68; *Newl. Con.* 110. And the reason why such a contract was adjudged to be void, was, that it was thought to encourage maintenance to permit the assignment of possibilities, chooses in action, and contingent interests. *Bac. Abr. title Maintenance.* There is a distinction at law between a near and remote possibility. A remote possibility, as the expectancy of an heir, is not regarded at law.—1 *Fonb. Eq.* 213, & *note E*; *Newl. Con.* 111. But in equity it is said that a possibility may be assigned, as well as a thing certain.—*Hardw. C.* 382; 2 *Sw. Dig.* 16; *Fearne on Rem.* 551.

The English statute of distribution was founded upon the custom of London, which was once the common law of England. And questions of advancement, whether they arise under the custom or statute, receive the same determination.—2 *P. Wms.* 356; *Finch's Ch.* 595; 1 *Mad.* 506; 1 *Ves.* 17. A son of a freeman of London, when of age, may, in consideration of an advancement, bar himself of his customary share; and if the advancement should prove to be less than his share under the custom, still he is barred from demanding any more.—*Finch's Ch.* 595; *Hardw. C.* 382.

BENNINGTON, February, 1830.

Robinson vs. Swift, admr.

The same principle is adopted in Massachusetts in the decisions under their statute of distributions.—4 *Mass.* 680; 8 *Ib.* 143. A release of the customary share was void at law, but was enforced as an agreement in equity.—*Toller*, 398; *Lex Test.* 426; 5 *Bac. Abr.* 705. A woman may before marriage bar herself from claiming under the statute of distributions.—1 *Mad.* 370; *Toller*, 392.

3. When a party claims the interposition of a court of equity on the ground of mispleading at law, or where he has neglected to avail himself of showing fraud or usury, or has neglected to move for a new trial, the court has refused to give relief.—2 *Vern.* 696; 14 *Ves.* 30; 1 *Johns. Ca.* 436; 1 *Johns. Ch.* 49; 1 *Sch. and Lef.* 201. The only principle to be extracted from these and other like cases is, that the omission of a party to avail himself of a defence, which is admissible at law, does not afford a ground of relief in a court of equity. But if a court of equity has jurisdiction of a cause, a judgement at law cannot be pleaded in bar to a bill between the same parties, even upon the same statement of facts, if the defence was not available at law.—5 *Cranch* 322; 17 *Johns.* 384; 7 *Ves.* 14; 5 *Ib.* 612; 1 *Atk.* 127; 1 *Atk.* 252; 1 *Gal.* 231; 2 *Wash. R.* 36, 255; *Finch's Ch.* 233; 1 *Vern.* 146.

*Isham for the defendant*—The demurrer to the plea in bar admits the averment there made, that the matter for which the orator prays relief in this bill was adjudicated and determined, first by the probate court, and afterwards by the Supreme Court on appeal. And no additional fact appears, to create an equity, that did not then exist, and was not adjudicated upon by those courts. The case then falls within the general rule, that the judgement and decree of a court of competent jurisdiction is final and conclusive between the parties. And this rule applies as well to a court of chancery as a court of law. 2 *Aik.* 384; 1 *Sch. and Leff.* 201; 7 *Cranch* 332-336; 9 *Wheat.* 534. Even in those cases where the court of chancery and the common law courts exercise concurrent jurisdiction, the election of the party to proceed at law will bar relief in chancery.—1 *Johns. Ch.* 91; 4 *Ib.* 410. The principal question therefore is, as to the jurisdiction of the probate and Supreme Court. Indeed, it is not pretended that this bill can be supported, except upon the ground that those courts had not a competent jurisdiction over the matter exemplified by their records.

BENNINGTON,
March.
1830.

Robinson
vs.
Swift, admr.

The statute of this state, in the organization of the probate court, has vested there the some authority and jurisdiction in the settlement of estates, that in England is exercised by their ecclesiastical court, and court of chancery. A debt due in equity can be allowed before that court, as well as a debt due at law. And a contract of the testator or intestate to convey lands can be enforced by that court.—*Stat. p.* 335, *sec.* 14. In making partition among the heirs, or between tenants in common, or legatees, the statute plainly gives to that court the same power that in England appertains to the court of chancery. And such a general principle is necessary, to prevent a resort to our court of chancery in the settlement of every estate. If then the court of probate possessed equitable powers, no question can exist as to the competency of its jurisdiction over the matter now pleaded in bar. Again, the court of probate, having ascertained the amount of the surplus estate, is, by statute, directed to make distribution among the heirs, and also to ascertain and declare the shares, proportion, and value, to be divided and set to each person entitled as heir.—1 *Chip.* 359. The question before the probate and Supreme Court was, whether Moses Robinson, jr. was entitled to any share or proportion of his father's estate; or whether the receipt set forth in the orator's bill was only evidence of an advancement to the amount therein specified. And under this question the receipt was mere matter of evidence, and subject to such legal or equitable construction as the legal or equitable rights of the parties required. In the trial of the cause as reported in *Brayton,* 59, it appears that those courts did exercise equitable powers in construing the agreement, by taking into consideration other facts which legally and equitably would prevent this instrument from barring his claim in the distribution; to wit, equal, and even greater, advancements made to the other heirs, a large subsequent increase of the estate, and the great difference between the sum received by Moses Robinson, jr. and those distributed to the heirs. . Either of those facts was sufficient in equity to prevent this instrument from barring his right in the distribution, even when considered under the customs of London or York.—3 *P. Wms.* 316.

No objection can be urged against the decree in consequence of the orator's minority at the time. The demurrer admits that Jerusha Robinson was the guardian of the orator, and that she appeared and prosecuted in his behalf. The rule is the same in chancery as at law, and a judgement or decree under those circumstances is obligatory upon infant plaintiffs or defendants, as much

BENNINGTON, as upon persons of full age.—3 *Atk.* 626 ; 2 *P. Wms.* 519 ; 9
March,
1830. *Mod.* 128 ; 2 *Vern.* 429. Our statute is also decisive upon this
question. It has provided for the appointment of guardians, and
prescribed the modes of proceeding in the distribution of estates,
the sale of real estate under licence, and the settlement of an ad-
ministrator's account, when any of the heirs are minors. Now all
these regulations are idle, if after notice has been given, and a de-
cree made, the proceedings are not to be final and conclusive.
The privilege of the ward, after arriving at full age, to open and
contest the settlement of his guardian's account, is an excepted
case, and is founded in peculiar reasons. It is allowed because
the interests of the guardian and ward are opposed, and the ward
has no representative during the continuance of the guardianship,
as against the doings of his guardian. This, however, furnishes
no reason for supposing, that, as between the ward and third per-
sons, the proceedings of the guardian, when conformable to all
statute regulations, are not conclusive : but the obvious inference
is the other way. An infant is bound by the probation of a will,
though by the probation he is disinherited.—7 *Mass.* 296.

*Robinson*
*vs.*
*Swift, admr.*

The opinion of the Court was delivered to the following effect by
Royce, Chancellor.—There is no occasion to question the ju-
risdiction of this Court, or the power of a court of chancery to en-
force a right of this description. Two questions only seem to re-
quire consideration.—Whether the adjudication of the probate and
Supreme Court is conclusive upon the right in question—and, if
such would be the effect of that adjudication in ordinary cases,
whether this case is differed by reason of the infancy of the orator
at the time.

In reference to the first point, it is expressly alleged in the plea
that the same matters now brought in question were then adjudg-
ed. And as this allegation is demurred to, it must be taken to
be true in its full extent, unless it is shown that there was a defect
of jurisdiction, or want of power, in those courts, to act upon the
subject in the equitable view of it which is now taken. The ina-
bility, if any existed, did not arise from any complication of facts
or difficulty of proof, but must have been inherent in the organiza-
tion of the probate system. Every fact which is now presented
was then brought into the case for consideration.

The leading proposition of the orator's argument, that the pro-
bate courts possess no other than a strictly legal jurisdiction, is
novel : no case is produced in which their powers have been thus

limited. Certainly their proceedings are not conformed to the course of the common law, and it was doubtless intended to confer upon them the primary and appropriate jurisdiction, for the investigation and allowance of personal claims of every description, and especially for the distribution of estates among those entitled to the same, whether by operation of law or by testamentary disposition. The subject of advancement by the ancestor to his heir was not overlooked by the legislature, but was provided for in terms very similar to those of the English statutes upon the same subject, and, with the other provisions for the settlement and distribution of estates, was expressly submitted to the administration of the probate courts. This would of course involve the inquiry as to what should be considered an advancement, and in what cases the heir, by any act of his, had renounced his right in the distribution. And it must be admitted as a serious embarrassment, if, after powers thus conferred have been executed in conformity with every requirement of the statute, and a final disposition of the estate has been made, the arrangement may be disturbed by the interference of another jurisdiction, acting on the same facts, but professing the exclusive power to give to them their proper effect. The probate courts, in order that their jurisdiction may be effectual and answer the design of their institution, would seem of necessity to possess a portion of equitable powers. That they have very few of the means employed by courts of equity to enforce their decisions is true; and for that reason the peculiar powers of a court of chancery may be sometimes needed to aid them in the exercise of their jurisdiction; but we think that, so far at least as the right of judging extends, these courts are not confined to the technical rules of common law, in opposition to established chancery principles. Even the cases from Massachusetts, on which the orator mainly relies, were cases of appeal from the probate court in the ordinary course of their probate system. And as far as we have examined, the only instances at all analagous to the present in which the court of chancery has interfered, were those arising under the custom of London, which is excepted from the English statute of distributions, or such as had not been finally acted on by those tribunals to which the execution of the statute had been committed. As before remarked, there is no reason to doubt our original right to decide upon the effect of the receipt which *Moses Robinson, jun.* executed to his father on the 7th of July, 1786; but the objection now is, that the effect of that instrument has been already settled by another jurisdiction, which in

MM

BENNINGTON,
March,
1830.

Robinson
vs.
Swift, admr.

our opinion had competent powers to render its decision effectual and conclusive.

The question as to the effect of the orator's infancy at the time of passing the decree admits of very little doubt. Indeed, the point is not even raised by him, but is met by way of anticipation by the opposite counsel. It is of the utmost importance that the settlement and distribution of estates, when made in the due course of existing laws, should be permanent. It usually happens on such occasions that many of the parties in interest are minors, and the law has accordingly provided for the appointment of guardians to take charge of their rights, has prescribed the modes of proceeding by which those rights are to be affected, has required of guardians proper security for the faithful execution of their trusts, and subjected them to an account with their wards. If it was not intended that proceedings between the wards and third persons, consummated in exact conformity to all these regulations, should be final, the legislature would doubtless have so said, and made some provision for so great an inconvenience. It is true, that the statute has saved to the ward, in certain specified cases, the right of objecting at full age ; but neither the statute nor any authority produced would justify us in extending that right to the present case. The result is that the plea must be allowed and the bill dismissed.