OAKES AMES & others, trustees, *vs.* FREDERICK GARRISON HALL & others.

Bristol.    October 29, 1942. — January 25, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Trust*, Termination, Annuity.    *Probate Court*, Costs.

Under provisions of a will giving to each of the testator's daughters the income for her life of a share of a trust fund and directing distribution of the principal of her share at her death subject to a right given to her to provide for an annuity to a surviving husband for his life in an amount "not exceeding one third of her share of the income of said trust property," the words "not exceeding one third of her share of the income" were practically equivalent to "not exceeding one third of the income of her share"; and, upon the death of a daughter who directed payment to her husband of one third of her "share of the income of the trust property," a decree properly required the trustee to hold one third of her share of the principal and to pay the income therefrom to the husband, and to distribute the remaining two thirds of her share in the manner provided by the will, instead of retaining the entire share during the husband's life.

A provision in a decree of a Probate Court on a petition for instructions that certain sums allowed as counsel fees "shall cover all future allowances for services and expenses in said matter" did not preclude this court from leaving it to the discretion of the Probate Court to allow further fees for services rendered upon an appeal from that decree.

PETITION for instructions, filed in the Probate Court for the county of Bristol on February 14, 1941, by trustees under the will of Oliver Ames, late of Easton.

The case was heard by *Hitch*, J., and in this court was submitted on briefs.

*F. Foster & H. L. Barrett*, for Frederick Garrison Hall, individually and as executor.

*D. M. Neuberger, S. Barnet & P. Barnet*, for Harry Chatman and another.

*W. M. Prest & C. L. Newton*, for William M. Prest, guardian ad litem.

QUA, J.    Oliver Ames, late of Easton, by his will executed in 1889 left his entire estate in trust with the provision that in the year 1905, after setting apart one fourth of

the estate for the benefit of his widow, the other three fourths should be divided into six equal parts, one of which should be for the benefit of each of his children, one half of each of the six parts to be transferred absolutely to each child, and the other half to continue in trust, the net income to be paid "annually" to the child. Then follow further provisions not material to the present controversy, relating to the shares of each of the testator's two sons. Paragraph "Eighth" comes next. This deals with so much of the shares of the testator's four daughters as remains in trust after the division of 1905. It reads as follows:

"*Eighth:* — The income of the shares of my daughters in said property, or trust fund, in the year 1905 and after, is to be paid to said daughters severally, semi-annually, or as it accrues, during their natural lives, upon their sole and separate receipts, not by way of anticipation, and free from the control of any husband, and in no way subject to the debts of said husband. On the decease of each of my daughters said trustees are to pay over her share of the trust property to her children, if any, in such proportion as she may by any instrument signed by her in the presence of three witnesses direct; and in default of any such instrument they are to pay over and distribute the same, equally, among her children and grandchildren, if any, grandchildren to take the share which would have fallen to their parents, if alive. Provided, however; if any of my daughters shall thus die, leaving a husband surviving, she may by any instrument of the character above set forth, provide for an annuity to be paid to said husband during his natural life, to an amount not exceeding one third of her share of the income of said trust property. If either of my daughters shall decease, as aforesaid, not leaving children or grandchildren, then all her share of said trust property is by said trustees to be added to the shares of my other children in said trust property, to be held and disposed of, principal and income, as hereinbefore provided, for the holding and disposition of the shares of said other children; subject, however, to any provision made for a surviving husband to the extent and in the manner aforesaid."

One of the testator's daughters, Evelyn Ames Hall, to whom income had been paid in accordance with clause "Eighth," died December 13, 1940, leaving no child or grandchild surviving her, but leaving as her surviving husband the respondent Frederick Garrison Hall. Her will contains this provision:

"FIRST: In exercise of the power given me under Clause Eighth of the will of my father, Oliver Ames, late of Easton, Massachusetts, I hereby provide that an annuity shall be paid my husband, FREDERICK GARRISON HALL, during his natural life to the amount of one-third of my share of the income of the trust property under my said father's will, and I hereby direct the trustee or trustees under said will to pay to my said husband the said annuity."

The decisive issues in the case relate to the method of putting into effect the "annuity" for the benefit of Frederick Garrison Hall. The judge entered a decree providing in substance that the trustees retain one third of the trust fund representing the share of Evelyn Ames Hall and pay the net income therefrom to Frederick Garrison Hall as his "annuity," and that the trustees distribute the other two thirds of the trust fund among those upon whom have now devolved the several trust funds representing the shares of the other five children of Oliver Ames. The only question argued relating to the merits of the case is whether the judge rightly ordered partial distribution of the corpus with the retention of a sufficient sum to produce the "annuity" to Frederick Garrison Hall or whether he should have required the trustees to continue to hold in trust the entire fund representing Mrs. Hall's share during the life of Frederick Garrison Hall in order that they might pay him the "annuity" of "one-third of . . . [Mrs. Hall's] share of the income of the trust property." In no other respect has the decree been attacked, except in relation to the incidental matter of counsel fees hereinafter mentioned.

In our opinion the decree on the merits was right. The main scheme of the eighth paragraph of Oliver Ames's will is a trust of each "share" to pay the income to a daughter of the testator during the life of the daughter, and "on

the decease" of the daughter to pay over the principal to her children or grandchildren, and in default of such issue to add the principal to the other "shares" to follow the devolution of those "shares." But the testator recognized that a daughter might leave a husband surviving her whom he did not desire to leave wholly unprovided for when the income to the daughter should cease at her death. He therefore broke in upon his simple main plan to the extent of giving each daugher a power to "provide" or appoint an "annuity" to her surviving husband during his natural life to an amount not in excess of one third of the income of her "share." And it seems plain that, since the daughter during her lifetime was to enjoy the whole income of her "share," the words "not exceeding one third of her share of the income" are equivalent to "not exceeding one third of the income of her share." But except to the extent of a possible interruption occasioned by such an appointment, the main scheme of distribution upon the death of a daughter was to continue in effect. The "annuity," if one should be appointed, was to constitute a charge upon the daughter's "share." "Subject" to that charge the principal of the "share" was to be distributed as directed, with the least interference compatible with the exercise of the power. When the testator allowed a daughter to "provide" for an "annuity" limited to an amount not in excess of one third of the income that her "share" might produce, without giving her any more detailed direction, it would seem that he left the exact manner of making the provision to his daughter's discretion. She ordered the trustees to pay the "annuity" to her husband and made the amount the maximum permissible amount of one third of the income of her "share." Perhaps she could have exercised the power by making provision in some other way, but no one questions the validity of her appointment. Her directions are to be carried out in such manner as to interfere as little as possible with the distribution of the principal which the testator, in general, plainly intended should follow upon the death of a daughter. No necessity exists for continuing to hold in trust Mrs. Hall's entire "share" during the life of her sur-

viving husband merely in order to pay him one third of the income from it. For all practical purposes the income of one third of her "share" will be equivalent to one third of the income of her whole "share." Two thirds of that "share" can be released for distribution among those who were to be the main objects of the testator's bounty after the death of Mrs. Hall. No good reason appears why they should be compelled to wait an indefinite period for the death of Frederick Garrison Hall. The decree of the Probate Court carries out the intent of the testator.

There is nothing in our decisions opposed to this result. Possibly this court has been less ready than some others to order trusts terminated when they were still in active operation. But we have not hesitated to order termination in whole or in part in proper instances. The only safe generalization is that termination in whole or in part has been ordered where such termination would best accomplish the testator's intent, *Inches* v. *Hill*, 106 Mass. 575, 578; *Sears* v. *Hardy*, 120 Mass. 524, 541, 542; *Sears* v. *Choate*, 146 Mass. 395, 397, 398; *Bartlett, petitioner*, 163 Mass. 509, 513; *Williams* v. *Thacher*, 186 Mass. 293; *Welch* v. *Episcopal Theological School*, 189 Mass. 108, 109, and has been denied where it would tend to defeat that intent. *Schaffer* v. *Wadsworth*, 106 Mass. 19. *Claflin* v. *Claflin*, 149 Mass. 19. *Young* v. *Snow*, 167 Mass. 287. *Forbes* v. *Snow*, 245 Mass. 85, 93. *Abbott* v. *Williams*, 268 Mass. 275, 283. *Weeks* v. *Pierce*, 279 Mass. 108, 116. *Damon* v. *Damon*, 312 Mass. 268. Many of the cases are discussed in *Springfield Safe Deposit & Trust Co.* v. *Friele*, 304 Mass. 224. Scott on Trusts, §§ 337.8, 340.2. In the present case the decree fully protects the surviving husband, and a present distribution of so much of the fund as is not required for his protection will be in accordance with the testator's general purpose that the trustees should distribute the fund "on the decease" of his daughter by adding it to the "shares" of his other children, "subject, however, to any provision made for a surviving husband to the extent and in the manner aforesaid."

The respondent Frederick Garrison Hall objects to that

part of the decree relating to counsel fees wherein it is stated that the sums allowed "shall cover all future allowances for services and expenses in said matter." We do not interpret this language as an attempt to bind this court in the matter of costs and expenses of the present appeals. Some further service of counsel would very likely have been required in connection with the distribution even if there had been no appeal, and these words may have been inserted out of extra caution. It is a common practice of this court to leave the allowance of costs and expenses of appeals in cases of this character to the discretion of the Probate Court. We see no reason to depart from that course, since the judge of probate will be in the best position to determine what is right and proper in this regard in view of all the circumstances. Whether any such allowances should be made with respect to these appeals and, if any are made, the amounts, are left to his discretion.

*Decree affirmed.*