BLACK ET AL. *v.* GARY ET AL.

[No. 102, October Term, 1951.]

*Decided February 14, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, and HENDERSON, JJ.

*Robert M. Goldman* and *Lawrence I. Weisman* for the appellants.

*Lawrence Perin,* with whom were *Semmes, Bowen & Semmes* on the brief, for Gary Black, appellee.

*Norman C. Melvin, Jr.,* with whom were *Hilary W. Gans* and *James B. Diggs* on the brief, for Van Lear Black, Jr., appellee.

Submitted on brief by *Edmund P. Dandridge, Jr.,* and *Venable, Baetjer & Howard* for Edward Stanley Gary and Safe Deposit and Trust Company of Baltimore, appellees.

MARBURY, C. J., delivered the opinion of the Court.

In this case, we are asked to construe the fifth codicil of the will of the late James A. Gary. Mr. Gary died

October 31, 1920, leaving a will and six codicils, all admitted to probate in the Orphans' Court of Baltimore City. He gave all the rest and residue of his estate to his son, Edward Stanley Gary, and the Safe Deposit & Trust Company of Baltimore, in trust. He divided the trust estate into eight equal parts, and then immediately gave one part to his only son, and directed that the trust with respect to this part should cease. The remaining seven parts he directed to be held and safely invested for the benefit of his seven daughters, with spendthrift provisions. From and after the death of any of these daughters, the will provided that the trust, with respect to the share of the one so dying, continue until the child or children of such daughter so dying respectively attained the age of 21 years, when such child or children would receive the principal, with further provisions as to children dying with issue before reaching the age of 21 years. Then followed a provision that in the event of the death of any of the daughters without leaving children surviving, or leaving children surviving, who should all die before reaching the age of 21 years without issue, then the share held in trust for such daughter should pass to and become the property of his son and the other surviving daughters and their issue, *per stirpes* and not *per capita*. These provisions as to the shares of the daughters are contained in Paragraph Fifth(e) of the will. The Fifth Codicil, which is the one before us for interpretation, by Paragraph I, provides as follows:

"That the trust or trusts created by sub-section (e) of the fifth clause of my Will in favor of my said seven daughters and their descendants shall continue, except as hereinafter expressed, until the death of the last survivor of the following persons, viz: my said seven daughters and any of their children living at my decease, and until the time so fixed for the cessation of the trust, the Trustees shall hold the principal in trust *except as hereafter expressed* and pay the net income of the seven (7)

shares or portions of my estate held for the use and benefit of my said seven daughters as follows:

"During the life of any of my said daughters, the net income of the portion or share held in trust for her shall be paid to her in equal quarterly instalments so far as the same may be practical dating from my death, and from and after the death of any of my said daughters the net income of her share or portion shall be paid over and distributed in like quarterly instalments to her descendants per stirpes and not per capita. And in the event of her dying without issue or of a failure of her issue before the period fixed for the cessation of the trust, the share or portion of my estate held in trust for said daughter who has died without issue or whose issue has failed as aforesaid, shall become the property of my son, Edward Stanley Gary, and of my other daughters, and the descendants of any of my said children who are deceased, per stirpes and not per capita, and the proportionate share of my said son, Edward Stanley Gary, or his descendants shall be delivered and paid over free of trust, and the proportionate share of my surviving daughters and the descendants of any of them that are deceased shall continue to be held in trust and the net income thereof shall be paid and distributed during the remainder of the trust to my said surviving daughters and to the descendants of any of my said daughters that are deceased, per stirpes and not per capita, but as to any of my grandsons living at my decease who are the sons of my said *daughters*, when any-one of them shall have arrived at the age of 30 years, my Trustees shall deliver to him free, clear and discharged of any trust, one fourth of the principal of his proportionate share *of the trust* property, and likewise when anyone of my said grandsons shall have arrived at the age of 40 years, my Trustees shall deliver to him one third of the remainder of the principal of his proportionate share *of the trust*

property, and his proportion of net income shall after such payments be accordingly diminished." (Emphasis supplied.)

The particular point at issue involves the last portion of that part of the codicil with respect to the payment to grandsons. One of the daughters, Mrs. Black, died leaving five children who accordingly succeeded to her interest in the trust estate. One of these children, Van Lear Black, Jr., is now over 40 years of age, and the other, Gary Black, is now over the age of 30 years. On an application by the trustees for a determination whether or not these two grandsons were entitled to have delivered to them under the Fifth Codicil, free and clear of the trust, that proportion provided for in the codicil of the principal share of the trust estate formerly held by their mother, the chancellor held that they were. All possible persons in interest were made parties, and a guardian *ad litem* was appointed for the children of Van Lear Black, Jr., and the children of Gary Black, and for all persons, not in being, whose interest in the subject matter might be affected. The guardian *ad litem* has appealed from the decree.

The contention made on behalf of the appellants is that the advancement provisions of the Fifth Codicil apply only to the shares of the daughters of the testator who might die without children, and do not apply to the shares of those daughters who die with children. Applying this contention specifically to Van Lear Black, Jr., and Gary Black, the appellants say that if one of their aunts should die without issue, they would be entitled to receive from the share of the trust estate which would come to them from the share of such aunt the proportion set out in the Fifth Codicil, free and clear of the trust, but that this is not true as to the share of their mother, who left children. They reach this conclusion by calling attention to the fact that the second paragraph of Item I of the Fifth Codicil is divided into two sentences which they contend contain two thoughts. They say the first sentence creates a life estate for each

of the seven daughters, and provides for income payments to the descendants of the daughters until the termination of the trust. The second sentence, they say, provides for the event of a daughter dying *without* issue, and has no relationship to the event of a daughter dying *with issue*. In this connection, they call attention to the use of the word "but" toward the end of that sentence which precedes the provision about the discharge of the shares of the grandsons. They likewise say that the words "proportionate share" appear only four times in the entire will and codicils, and all four of these times are in this one sentence. In the first two instances, it refers to the proportionate share of a beneficiary in trust for one of the testator's daughters dying without issue, and they say that the same words should be given the same meaning in that part of the sentence which refers to the grandsons' shares. They also say that there is a general presumption toward equality, that the general intention of the testator was to preserve a basic security for all beneficiaries by adding a spendthrift clause, and that the courts should not presume that the testator was inarticulate and did not express himself clearly. They claim that there is no ambiguity in Item I of the Fifth Codicil.

The appellees, Van Lear Black, Jr., and Gary Black, also claim there is no ambiguity in the Fifth Codicil, but they interpret it in a different way. Parenthetically, it may be noted that by these two statements, each denying ambiguity, each sides disproves the other's contention that the will is not ambiguous. The testator *was* inarticulate in the sense that he did not give a clear expression of what he meant by the clause following the word "but". The appellees call attention to the fact that in the first part of the second sentence in Part I of the Fifth Codicil, the words "my said daughters" apply to all of the said seven daughters, and not only to those dying without issue, and, calling upon the same principle mentioned by the appellants, they say that these words, when used in the last part of the

paragraph, should be construed to refer to all of the said seven daughters. In respect to this principle, it may be noted that it is not always applicable. "The same word has often different meanings ascribed to it in different cases, in order that the apparent testamentary intention might be given effect in each." *Marshall v. Safe Deposit Co.*, 101 Md. 1, 6, 60 A. 476, 477; *Gittinger v. F. & M. National Bank*, 180 Md. 640, 646, 26 A. 2d 414.

It is hardly necessary for us to repeat the general principles of testamentary construction so many times reiterated by this court. The intention of the testator is paramount and must be determined from the words of his will, in connection with the situation in which he was at the time he made it. There are certain canons of construction which aid in arriving at this intention with respect to any particular devise or bequest. One of these is that which expresses a preference for early vesting. This is discussed in connection with remainders in *Robinson v. Mercantile Trust Co.*, 180 Md. 336, 341, 24 A. 2d 299, 301, 138 A. L. R. 1427. We there said: "In the absence of any express statement to the contrary, remainders will be held to vest at the earliest possible moment." Reasons for this rule are given, and then we state that it is not to be substituted for the intention of the testator, but is to be invoked only to aid that intention and not to defeat it. In *Chism v. Reese*, 190 Md. 311, 319, 58 A. 2d 643, 647, we said: "The testator has the right to fix the period of vesting, and if he does so with reasonable certainty, his intention will be carried out." And, "The most important rule of construction on the question when an estate was intended to vest is that the law favors the earliest vesting of estates. Where there is more than one period mentioned in a will, the court will generally adopt the earlier one unless this construction is contrary to the testator's intention as disclosed by the terms of the will." In the case of *Boynton v. Barton*, 192 Md. 582, 64 A. 2d 750, this statement was quoted, and the rule applied.

We are unable to find from the will and codicils of Mr. Gary any particular reason why his maturing grandsons should receive absolutely a share of an estate coming to them through the death of a childless aunt, which in all probability would be comparatively small, and should be denied the privilege of receiving absolutely the same share of their own mother's portion, which would be comparatively larger. Nor can we find such a direction in the Fifth Codicil, in spite of its general lack of conformity to the best grammatical standards. Mr. Gary, in his will, showed a preference for his only son whose share was not left in trust. He had confidence in his son, as evidenced by some of the statements in his will. He made him one of his executors and one of his trustees, directing that he serve in the latter capacity without bond. This is in contrast to the spendthrift trust provisions in which he clothed his daughters' shares. This may have been due to the fact that his son and his son's descendants would bear the family name, while his daughters' descendants would not. It may have been due to an inherent feeling, perhaps more common in his day than it is now, that men were more competent to manage financial affairs than women. It is clear that the provision in the Fifth Codicil, which we are construing, does prefer grandsons to granddaughters. The former are to be allowed to have part of their money absolutely free of the trust, but no such provision is made for the granddaughters. There was, therefore, no general principle of equality inherent in the will.

The change of interest with respect to the grandsons, from a beneficiary of a trust to the holder of an absolute estate, is not clearly restricted to the shares of the childless daughters. It could have been, but the testator did not so state. We can therefore find no intention in the will and the codicil which would be contrary to the rule of early vesting, and we think this rule should be applied and is controlling of the question here presented. Its application permits the grandsons to take out of the

trust the proportion of the shares provided in the Fifth Codicil, not only those derived from the aunts dying without issue, but those derived from their own mother. The decree of the chancellor carries out this construction of the will, and we think it is correct.

*Decree affirmed, costs to be paid out of the trust estate.*