# In re Charles H. Bayley Trust

[ 250 A.2d 516 ]

December Term, 1968

Present: Holden, C.J., Shangraw, Barney and Keyser, JJ.

Opinion Filed February 4, 1969

*Ryan & Ryan* for Museum of Fine Arts.

*Fitts & Olson* for Margaret C. Fabyan and Dorothy Chamberlin Robinson.

*Witters, Akley & Brown* for First Congregational Church of Newbury, Inc., Tenney Memorial Library, Inc., Mary Hitchcock Memorial Hospital, Newbury Village Burying Ground Ass'n, Inc., and the Town of Newbury.

*James L. Oakes,* Attorney General, for the State.

*Otterman & Allen* and *F. Winchester Denio, Esq.,* for the First National Bank of Boston, Trustee.

**Holden, C.J.** This is an appeal by the trustee from an order of the probate court, directing partial termination of the testamentary trust established by Charles H. Bayley. Mr. Bayley, who resided at Newbury, Vermont, died January 28, 1928. His will was established and allowed by the probate court for the district of Bradford.

The testator bequeathed the residue of his estate to the First National Bank of Boston in trust. In substance, the will directed the trustee to pay one-half the annual gross income to Laura Morse Bayley, the surviving widow. Provided the widow received an annual net income of not less than $12,000, the remaining income was to be expended to certain specified relatives and to four annuitants for charitable uses—The First Congregational Church, the Tenney Memorial Library, the Ox-Bow Cemetery, all of Newbury, and the Mary Hitchcock Memorial Hospital of Hanover, New Hampshire.

The will provides that the "trust hereby created shall be terminated upon the death of the last surviving life beneficiary hereinbefore mentioned * * *." Upon the termination of the trust, the trustee was directed to pay a bequest to the Mary Hitchcock Memorial Hospital and establish four separate trusts to continue the benefit of the charity specified above and provide income to be paid to the town for the maintenance of the Village Common and shade trees.

The will then follows:

All the rest, residue and remainder of my estate, of every name and nature, both real and personal, of which I may die seised and possessed, or to which I may be entitled at the time of my decease, or which may fall into the said rest and residue of my estate, as hereinbefore provided, I give, devise and bequeath to the Museum of Fine Arts, located in said Boston, and its successors, the same to be held by it as a separate and permanent fund to be known as the "Charles H. Bayley Picture and Painting Fund," the

income only to be expended in the purchase of pictures and paintings for said Museum of Fine Arts.

Mrs. Bayley died on February 7, 1963. Only two of the life beneficiaries are now living—Margaret C. Fabyan and Dorothy Chamberlin Robinson. Under the terms of the will, these annuitants receive $2,000 and $1,000 annually. With the income payable to the charities during the life of these beneficiaries, the total income distributed by the trustee is $5,500.

On December 31, 1966, the market value of the trust estate was $6,856,081.08. Since the death of Mrs. Bayley the trustee has accumulated more than $600,000 from income, beyond that required to pay the annuities, adding an average of $200,000 to the principal each year.

On October 21, 1966, all of the surviving beneficiaries under the will joined in an agreement to petition the probate court to terminate the trust as to that part of the estate which is not necessary to provide the income required for the annuities specified in the instrument. The agreement provides for setting aside sufficient funds to increase the annuity of Margaret C. Fabyan from $2,000 to $3,000, and that of Dorothy Chamberlin Robinson from $1,000 to $1,750 during their respective lives. The share to be distributed to the Mary Hitchcock Memorial Hospital is increased from $10,000 to $25,000. The separate trust estates for the benefit of each of the charities in Newbury are also enlarged to provide increased income to those beneficiaries. The agreement provides that upon the setting apart of these sums—the Trustee shall forthwith pay over, transfer and deliver the remainder of the residuary trust fund, held by it under the will, to the Museum to be received by it for the purposes set forth in the residuary clause of the will. Subject to these changes, the entire trust estate is to be distributed, as provided in the will, upon the termination of the trust at the death of the last surviving life beneficiary.

In accordance with its stipulation, the agreement of the beneficiaries was presented to the probate court for the district of Bradford by petition of the Museum of Fine Arts. The trustee and the attorney general of Vermont were cited before the court with the several beneficiaries. The case was submitted on agreed facts.

After hearing, the court determined that the trust created under the will of Charles H. Bayley was not a spendthrift trust. It was further

determined that no lawful restriction imposed by the testator and no ascertainable purpose of his will would be nullified or disturbed by the court's approval of the agreement of the beneficiaries. The court found that the life expectancies of the living annuitants, Margaret C. Fabyan and Dorothy Chamberlin Robinson, as of July 31, 1968, were 9.63 and 9.15 respectively.

Other findings of the court establish that since the death of the testator, particularly in the last ten years, the scarcity of paintings and pictures of high quality, desirable for acquisition, has been subject to extraordinary and continuing increase. The prices required to purchase such works of art will continue to increase in the foreseeable future. The purchasing power of the dollar has declined substantially since the death of the testator. The court also found that all parties to the proceedings will be substantially benefited by carrying out the agreement of the beneficiaries and that this is especially true of the Museum of Fine Arts. The agreement will enable this beneficiary to purchase paintings and pictures of high quality at prevailing prices and before these works of art are permanently removed from the market. Upon these considerations, the probate court approved the agreement of the beneficiaries and issued its decree in substantial compliance with its terms.

In these proceedings the trustee, the First National Bank of Boston, has assumed the posture of a stakeholder, without urging either the adoption of the agreement or adherence to the literal terms of the Bayley will. To make certain that the decree issued by the probate court is effective and binding and insure proper performance of its duties under the trust, the trustee brings this appeal. Two questions are presented—(1) Does the probate court for the district of Bradford have jurisdiction to hear and act upon the petition? (2) May the beneficiaries of the Bayley trust, by mutual agreement and with the approval of the probate court, accelerate the distribution of a substantial portion of the trust estate in the manner demonstrated in the record?

The jurisdictional question presented by the trustee seems to arise from its precautionary attitude that there is competing or conflicting authority between the courts of probate and chancery in the field of testamentary trusts. Such is not the case.

Courts of probate have plenary and exclusive jurisdiction in the settlement of the estates of decreased persons which continues

until the estate is fully administered. *Murray* v. *Cartmell's Executor,* 118 Vt. 178, 180, 102 A.2d 853. *In re Estate of Curtis,* 109, Vt. 44, 49, 192 A. 13. Inherently, as well as by statute, they have general equity powers to hear and determine matters relating to testamentary trusts that develop in the settlement of estates. 14 V.S.A. §2327; *In re Will of Prudenzano,* 116 Vt. 55, 61, 68 A.2d 704; *First National Bank of Boston* v. *Harvey Comm. of Taxes,* 111 Vt. 281, 295, 16 . A.2d 184; *Robinson* v. *Swift, Admr.,* 3 Vt. 283, 289.

■ The careful pen of the late Justice Blackmer has defined the area for the intervention of the courts of equity in this domain. "The jurisdiction of the court of chancery in probate matters is not original, but special and limited, and only in aid of the probate court when the powers of that court are inadequate. * * * It must appear, among other things, that the probate court cannot reasonably and adequately handle the question." *In re Will of Prudenzano, supra,* 116 Vt. at 61, 68 A.2d at 709. Thus, where the probate court is wanting in authority to grant adequate equitable relief concerning persons or claims beyond its reach, equity jurisdiction may be invoked to provide essential assistance. *Manley* v. *Brattleboro Trust Co.,* 116 Vt. 460, 464, 78 A.2d 488; *Heirs of Adams* v. *Adams' Admrs.,* 22 Vt. 50, 58.

■ The concern of the present proceedings is the trust and trust funds that were established under the will of Charles H. Bayley. The trust estate, its trustee and all beneficiaries in being, are presently before the probate court for the district of Bradford. Since the estate has not come to an end, the powers of that court are entirely adequate to deal with the questions presented. *Abbott* v. *Abbott,* 112 Vt. 449, 452, 28 A.2d 375.

The remaining question is whether that tribunal had the legal authority to accelerate the operation of the residuary clause in the manner provided by the agreement of all the beneficiaries. We think it did.

The postponement of the distribution was principally designed to protect the interest of the testator's widow and, incidentally, that of the surviving life beneficiaries. The provision that the widow is to receive one-half the annual income, but in no event less than $12,000, clearly indicates the testator did not forsee the bountiful accumulations that now prevail. However that may be, Mrs. Bayley is now deceased. The other life beneficiaries, who have survived, have agreed to the partial

termination of the original trust and join the other beneficiaries to urge that the probate decree be affirmed. Their life interests are adequately secured. The design of the agreement and the scheme of the will are entirely compatible. In the present inflationary economy, the agreement promotes the objectives of the testator's bounty and is in no way discordant with his interest.

When all the beneficiaries of a trust desire to terminate it in part, they can compel that result unless the continuation of the entire trust estate is necessary to carry out a material purpose of the trust. *Davis* v. *Goodman,* 17 Del. Ch. 231, 152 A. 115, 117; *Welch* v. *Trustees of Episcopal Theological School,* 189 Mass. 108, 75 N.E. 139, 140; *Ames* v. *Hall,* 313 Mass. 33, 46 N.E. 2d 403; *Harlow* v. *Weld,* R.I., 104 A. 832; Restatement, Trusts 2d §337, comment p; Scott, Trusts (Third Ed.) §337.8.

Continuation of the entire trust estate is not essential to the purpose of the trust. To the contrary, the facts presented demonstrate that partial termination and acceleration of the remaining trusts will serve the testator's ultimate objective and promote the interests of those he sought to protect by the postponement.

*Decree affirmed.*