592 A.2d 492

**In re TRUST Under the Last Will and Testament Of Michael J. LANE; Mildred L. Brownell and Herbert W. Reichelt, Trustees.**

**No. 60, Sept. Term, 1990.**

Court of Appeals of Maryland.

July 22, 1991.

Josef B. Brown and Daniel A. LaPlaca (Reichelt, Nussbaum, Brown, Dukes & LaPlaca, on brief), Greenbelt, for appellant.

Philip L. O'Donoghue and Stanard T. Klinefelter (Dena C. Feeney, Cristin C. Lambros, on brief), Baltimore, for Estates and Trusts Section of the Maryland State Bar Ass'n, for amicus curiae.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired, specially assigned).

CHASANOW, Judge.

This case presents two issues for our consideration: Whether the circuit court may modify the terms of a

testamentary trust if all the beneficiaries consent and the modification does not frustrate the settlor's purpose; and secondly, if in fact the court has the power to modify the testamentary trust, whether, in the instant case, all the possible beneficiaries have consented to the proposed modification.

At the heart of the controversy is the last will and testament of Michael J. Lane, who died on February 10, 1964. A testamentary trust was created, the pertinent language of which reads as follows:

> "*SIX:* All of the rest, residue and remainder of my estate, whether real or personal, and wheresoever situated, I give, devise and bequeath unto my daughter, Mildred L. Brownell, and to Herbert W. Reichelt ... as Trustees, in and upon the following uses and TRUSTS:
>
> (a) To hold, manage and control the same; to collect all income and profits therefrom and to pay all proper expenses connected therewith:
>
> (b) To pay to my son, Eugene F. Lane, and to my daughter, Mildred L. Brownell, therefrom the sum of $200.00, each a month during their lifetime:
>
> (c) Upon the death of the survivor of my said children, Eugene and Mildred, the trust shall thereupon terminate and the surviving Trustee shall distribute the proceeds of the trust as it then consists, including interest and principal, equally, share and share alike, among my grandchildren; Nancy Marie Brownell, Lois Lane, and Patricia Lane, or to the survivors of them if any be deceased."

Eugene F. Lane died on November 11, 1967. The sole surviving life beneficiary, Mildred Brownell, is paid $200.00 per month from the corpus of the trust. The trust property consists of several residential rental properties and various certificates of deposit. In 1987, the trustees, with the consent of Mildred Brownell (the life beneficiary) and the settlor's grandchildren, Nancy Marie Brownell Mould, Lois

Lane King, and Patricia Lane Everding (the remaindermen), petitioned the Circuit Court for Prince George's County for a modification of the trust. At that time, the net annual rental income from the trust's real estate properties was approximately $11,000, and the annual interest on trust principal was roughly $12,700. A circuit court judge granted the requested modification on August 11, 1987, and a cash allotment of $25,000 was disbursed to each of the remaindermen.

In May 1988, the trustees, again with the consent of the beneficiaries (the life beneficiary and the remaindermen), petitioned the Circuit Court for Prince George's County for a further modification of the trust, this time seeking an immediate cash distribution of $10,000 payable to each of the remaindermen. Another judge of the circuit court concluded that the testator's purpose would be frustrated if the trust was modified as requested and on July 21, 1988, denied the petition. The trustees petitioned the court yet again on December 22, 1989, for a modification of the trust, requesting a disbursement of $25,000 to each remainderman, all of whom, along with the life beneficiary, consented to the distribution. On March 26, 1990, the circuit court again denied the trustees' petition. The court reasoned that "its powers to modify the trust are limited to either continuing the trust as it now exists or terminating the trust" and "there are unknown beneficiaries who have not consented to the trust's termination." The trustees appealed to the Court of Special Appeals. We granted certiorari prior to the intermediate appellate court's consideration of the matter.[1]

## I. THE CIRCUIT COURT HAS THE POWER TO MODIFY THE TRUST.

The circuit court concluded that, although it may terminate a trust in certain instances, it does not have the

---

**1.** Since there were no appellees in this case, we requested that the Maryland State Bar Association submit a brief of *amicus curiae*. We found it most helpful in rendering our decision.

"power to continue the trust, yet at the same time distribute trust funds to the remaindermen." We disagree. It may be deduced that if a court has the power to terminate a trust it necessarily has the power to take less drastic measures and modify that same trust.[2]

A trust may be terminated

"when all the objects and purposes of the trust which are inconsistent with the full beneficial ownership and control of the *cestui* are fulfilled, all the parties who are or may be beneficially interested in the trust property are in existence and *sui juris,* and they all consent and agree to the ending of the trust."

*Manders v. Mercantile Trust Co.,* 147 Md. 448, 457, 128 A. 145, 148–49 (1925).

 It is a well-settled tenet of Maryland law that a spendthrift trust may not be prematurely terminated, even with the consent of all the beneficiaries, because it would defeat the intentions of the testator. *Mahan v. Mahan,* 320 Md. 262, 276–77, 577 A.2d 70, 77 (1990); *Kirkland v. Mer.–Safe Trust Co.,* 218 Md. 17, 24, 145 A.2d 230, 233 (1958). The trust in the instant case clearly is not a spendthrift trust and may be terminated upon the agreement of the life beneficiary and the remaindermen, with the approval of the court. The settlor did not place a restraint on alienation of the beneficiaries' interests, and thus, termination with the consent of the life beneficiary and the remaindermen would not undermine the settlor's designs. Since the court may, when all the beneficiaries consent, *terminate* the trust, it follows that the court may authorize the mere *modification* of the trust when all the beneficiaries so consent. It serves no useful end to require that Mildred, Nancy, Lois, and Patricia (the trust beneficiaries), in order to provide Mildred with her $200.00 monthly payment, engage in the wasteful

---

2. "A court having equity jurisdiction has general superintending power with respect to trusts." Maryland Code (1974, 1991 Repl.Vol.), Estates and Trusts Article, § 14–101.

exercise of terminating the trust, only to reestablish a new trust with the same assets.

Partial termination of a trust may be sanctioned by the court. "Where the court, for any reason, would end the trust as a whole if all the beneficiaries applied, it may terminate the trust in part, and direct the trustee to deliver over part of the principal to a beneficiary." G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 1007, at 407–08 (rev. 2d ed. 1983). A trust need not be kept intact if such action would only serve as a burden on the beneficiaries without furthering the settlor's purpose.

> "Where the continuance of the trust of the whole of the trust property is not necessary to carry out a material purpose of the trust, and all the beneficiaries consent and none of them is under an incapacity, they can compel the termination of the trust as to a part of the property."

4 A. Scott, *The Law of Trusts* § 337.8, at 2683–84 (3d ed. 1967) (hereinafter *Scott on Trusts*). If partial termination of the trust "would best accomplish the testator's intent," then the court should so order. *Ames v. Hall*, 313 Mass. 33, 46 N.E.2d 403, 405 (1943). In *Ames*, the court allowed the partial termination of a trust where the settlor provided that each of his daughters would receive income from the trust property and could provide, by so stating in her will, an annuity for her husband in an amount not to exceed one third of her individual trust share. One daughter devised to her husband one third of her share of the income from the trust property. The court found that it would not serve a worthwhile purpose to hold the entire amount of the daughter's share in trust for the husband's lifetime, and therefore, the court released two thirds of the share for distribution among the settlor's surviving children, perceiving "[n]o good reason ... why they should be compelled to wait an indefinite period for the death of [the husband]." *Id.*, 46 N.E.2d at 405. See also *In re Bayley Trust*, 127 Vt. 380, 250 A.2d 516 (1969), where a partial termination of a trust was allowed since keeping the entire trust intact was not necessary in order to pay the required annuities. It was

declared, "When all the beneficiaries of a trust desire to terminate it in part, they can compel that result unless the continuation of the entire trust estate is necessary to carry out a material purpose of the trust." *Id.*, 250 A.2d at 519. In the instant case, the partial distribution of the trust assets would not be adverse to the testator's intent. He sought to provide a modest monthly payment to his children, Mildred and Eugene, and to disburse the remainder of the trust assets to his three grandchildren. These ends will not be circumvented by the early distribution of a relatively small portion of the trust to the intended beneficiaries.

## II. ALL THE POTENTIAL BENEFICIARIES OF THE TRUST HAVE BEEN ASCERTAINED AND HAVE CONSENTED TO THE PARTIAL TERMINATION.

The circuit court interpreted the phrase "share and share alike, among my grandchildren, ... or to the survivors of them if any be deceased" to mean that the settlor created a contingent remainder in the grandchildren (remaindermen), whereby their interests were contingent upon their surviving Eugene and Mildred. Under this interpretation, the testator's estate retains a reversionary interest in the trust property;[3] and if none of the three remaindermen survives Eugene and Mildred, the trust property would revert to the testator's estate and be distributed according to the precepts of intestate succession.

It is clear that Nancy, Lois, and Patricia have a vested remainder interest in the trust property.[4] Unless the testator's intent is clearly to the contrary, there is a preference for early vesting. *Weller v. Sokol*, 271 Md. 420, 435, 318 A.2d 193, 202 (1974); *Black v. Gary*, 199 Md. 354,

---

**3.** "A reversion is the interest remaining in the grantor, or in the successor in interest of a testator, who transfers a vested estate of a lesser quantum than that of the vested estate which he has." 1 *American Law of Property* § 4.16, at 432 (A. Casner ed. 1952).

**4.** The owner of a vested remainder is "ready to take it immediately on the termination of prior vested estates." 1 *American Law of Property* § 4.2, at 408.

361, 86 A.2d 480, 483 (1952). There is also a preference for espousing an interpretation that would avoid the creation of a partial intestacy, as "partial intestacy ... is not favored by the law." *Gittinger v. F. & M. National Bank,* 180 Md. 640, 646, 26 A.2d 414, 418 (1942). In addition, a remainder generally vests on the death of the testator, not the death of the life tenant. *Weller,* 271 Md. at 435, 318 A.2d at 202; *Boulden v. Dean,* 167 Md. 101, 107, 173 A. 26, 28 (1934).

In *Gittinger,* the testator created a trust for the benefit of his wife for life. After her death, it was to be distributed to his brother and two sisters, " 'equally, and if any of them be dead at the time of the termination of said trust, then to the survivor [or] survivors of them equally.' " 180 Md. at 642, 26 A.2d at 416. This phrase was interpreted by the Court as creating a vested remainder in the three siblings and a condition subsequent upon which the vested remainders may be divested.[5] *Id.* at 645, 26 A.2d at 417. The condition was that if one or two of the remaindermen were deceased at the termination of the trust, then the survivor(s) of the deceased remaindermen would divide that portion of the estate equally.

Whether a condition is precedent or subsequent depends "upon the intention of the testator, but if a gift is first given and then a condition is added by later words, such condition is generally held to be one of termination and not of initiation." *Keyser v. Calvary Breth. Church,* 192 Md. 520, 523, 64 A.2d 748, 749 (1949). In *Gittinger,* the testator "first gave the property to the three named remaindermen, and then provided what should happen to the share of each of them if certain conditions existed at the death of the life tenant. Those conditions are conditions of termination and not of initiation." 180 Md. at 644, 26 A.2d at 417. In distinguishing between contingent and vested remainders,

---

**5.** "The word 'divestment' denotes the cutting short of an interest which has been vested, and not a mere ascertainment that an interest cannot ever become a present interest." 2 *Restatement of Property* § 156 comment (a), at 536 (1936).

we held that "if the conditional element is incorporated into the description of, or into the gift to the remainder-man, then the remainder is contingent; but if after words giving a vested interest a clause is added divesting it, then the remainder is vested." *Id.* (citing J. Gray, *Rule Against Perpetuities* § 108 (4th ed. 1942)).

The language in the will in the instant case stating "or to the survivors of them if any be deceased," classifies the vested remainder as a defeasible vested remainder. A defeasible vested remainder is a vested remainder which may be defeated by a subsequent occurrence before the termination of the precedent estate. It is a remainder with a condition subsequent which may divest a vested interest.

In order to determine whether all of the potential beneficiaries of the trust have consented to its modification, it is necessary to determine how the trust would be distributed under all possible circumstances. If one remainderman dies before Mildred leaving other remaindermen who survive Mildred, the survivors take the deceased remainderman's interest by way of substitution. The clause "or to the survivors of them if any be deceased" is a substitutional clause.

> "The term 'substitutional' is generally applied to limitations intended to provide for the disposition of a gift upon the death of a devisee or legatee before the period of distribution. The simplest form is effected by the use of the word 'or', which is usually regarded as implying substitution...."

E. Miller, Jr., *The Construction of Wills in Maryland,* § 218 n. 3 at 602 (1927). This Court also stated in *Reiff v. Strite,* 54 Md. 298, 304 (1880),

> "The disjunctive word 'or' clearly implies substitution; that is, it is taken as meaning that the gift over by way of substitution should take effect in case of the death of the first legatee before the time when the legacy became absolutely and indefeasibly vested in him."

■ Upon Mildred's death, if one of the three named remaindermen is deceased, that remainderman's interest is divested and the two surviving remaindermen each take a one-half share of the property by way of substitution. Likewise, if two of the three remaindermen are deceased at Mildred's death, then the survivor would be entitled to the entire interest. *See* 2 *American Law of Property* § 6.1 (A. Casner ed. 1952); 2 H. Tiffany, *The Law of Real Property* § 419 (3d ed. 1939). All the trust beneficiaries in the instant case, namely, Nancy, Lois, Patricia (the remaindermen) and Mildred (the sole remaining life beneficiary), have consented to the partial termination of the trust.

■ The circuit court was troubled by the possible scenario of all three remaindermen predeceasing the life beneficiary. If that should occur, the court concluded, "the remainder would then pass to Michael J. Lane's intestate heirs, because there is no other residuary clause in the subject will other than the one which created the trust." We disagree with this interpretation. Upon the occurrence of the aforementioned event, the trust property would be divided into three equal shares and pass under the wills of the three remaindermen or by intestate succession to the heirs of an intestate remainderman.

*Gittinger, supra,* is similar to the instant case and therefore controls our analysis. The will in *Gittinger* provided that a life estate be created and after the death of the life beneficiary the trust was to be distributed to three remaindermen " 'equally, and if any of them be dead at the time of the termination of said trust, then to the survivor [or] survivors of them equally.' " 180 Md. at 642, 26 A.2d at 416. The three remaindermen in *Gittinger* died before "the time fixed by the testator for the operation of the condition." *Id.* at 645, 26 A.2d at 418. The argument that the entire estate should pass to the last of the three remaindermen to die simply because he was the last survivor of the three remaindermen was rejected by the Court. We found that

"[t]he difficulty with this view is, that at the time fixed by the testator for the operation of the condition, he was not alive and in a position to receive the estate. The testator fixed the time of survivorship and it must be determined as of that time. As the last living remainderman was not alive at that time, he could not receive his sisters' estates, even if they had predeceased him."

*Id.* at 645–46, 26 A.2d at 418. Instead, the trust property was divided into three equal parts and distributed to the estates of the remaindermen. The Court found that the vested remainder interests in the three remaindermen were not divested and, in doing so, focused on the point in time when divesting could occur, that is "at the time of the termination of said trust." *Id.* at 645, 26 A.2d at 417. Divesting would occur if at that time a remainderman was dead and was survived by siblings. Since this situation did not occur, the remainder interests became indefeasible in the remaindermen. Accordingly, each of the three vested remainder interests passed under the deceased siblings' wills or to their intestate takers. *Id.* at 646, 26 A.2d at 418.

The instant case is analogous to *Gittinger* and, applying the same reasoning, we find that Michael J. Lane created a vested remainder interest subject to a condition subsequent in Nancy, Lois and Patricia. If Nancy, Lois, *and* Patricia were to predecease Mildred, upon Mildred's death the trust property would pass to the estates of the three remaindermen in equal shares. The testator's estate does not retain a reversionary interest in the trust property, so there are no unknown beneficiaries.

Since the three remaindermen have vested remainder interests subject to divestment, at Mildred's death the Trust will pass to one of them or to their respective heirs or legatees. The potential heirs or legatees do not have to consent to the modification of the Trust. They have no right to the remainder interest since the owner of a vested remainder interest can transfer it (like any of the rest of his property) before death. E. Miller, Jr., *The Construction of Wills in Maryland* § 215.

Under no circumstances will the Trust pass to the Testator's intestate heirs. However the Trust is allocated, based on the circumstances at Mildred's death, the potential beneficiaries have consented to its modification. Consequently, the lower court erred in finding that all of the potential beneficiaries of the Trust have not consented to its modification.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED.