JOSIAH LEE JOHNSTON, Henry E. Johnston and William
A. Fisher *v.* THOMAS Y. CANBY, Charles
B. Hatch, and Others.

*Decided June 24th, 1868.*

MORTGAGES ; DEFECTIVE ; NOTICE OF SUBSEQUENT INCUMBRANCERS.

A subsequent incumbrancer chargeable with actual notice of a pre-existing imperfect mortgage, will, in a Court of Equity, be postponed to it; and it is immaterial whether the imperfection in the mortgage which would render it invalid and inoperative in a court of law, arises from the

fact that it was not properly acknowledged or not duly recorded, or had not endorsed upon it an affirmation as to the nature of the consideration required by the statute.   (*a*)                pp. 220-221 (217)

Appeal from the Superior Court of Baltimore City, in equity.

The bill in this case filed by the appellants on the 17th of June, 1864, stated that the appellants, Josiah Lee Johnston and Henry E. Johnston, conducting business under the firm name of, Johnston Brothers & Co., obtained a judgment against Charles

**212** B. Hatch, of Baltimore County, one of the *defendants, in the Circuit Court for said county, on the 21st of November, 1860, for the sum of $14,377.19, with interest from the 9th of the same month; that there remained due and unpaid of said judgment, at the time of filing the bill, $9,663.58.   That a certain William M. Townsend and wife, by bond of conveyance duly recorded, and dated May 16th, 1855, contracted to convey to said Hatch, a tract of land in Baltimore County, called " Glenn Leila," and that he had paid nearly the whole amount of the purchase money for said farm.   And further, that upon a judgment in the Circuit Court for Baltimore County, obtained in the year 1863, in a suit of a certain O. Brehme, against the said Hatch, a *fieri facias* was issued to the Sheriff of Baltimore County, who, by virtue of said writ, sold the said " Leila " farm, at public auction, to the appellant, William A. Fisher, and gave him a deed of conveyance for the same, dated the 11th of June, 1864, and which was duly recorded.

The bill further stated that the appellants had ascertained that, with a view to protect an alleged indebtedness of Hatch to a certain Thomas Y. Canby, of Baltimore County, one of the defendants, and to cover advances that might be made by Canby to Hatch, to an amount, in all, not exceeding $6,000, Hatch and

---

(*a*)  See *Valentine v. Seiss,* 79 Md. 190; *Russum v. Wanser,* 53 Md. 98; *Butler v. Rahm,* 46 Md. 549, and cases cited in note (*d*) to *Moale v. Buchanan,* 11 G. & J. 211.  As to trusts not expressly created by recorded deed, see *Carson v. Phelps,* 40 Md. 99.  As to mortgages recorded after the time required by the registry Act, see *Pfeaff v. Jones,* 50 Md. 272; see the Code of Pub. Gen. Laws, Art. 21, sec. 19; Art. 16. sec. 33;  see also *Hoffman v. Gosnell,* 75 Md. 590; *Harding v. Allen,* 70 Md. 398; *Nickel v. Brown,* 75 Md. 187.  As to *notice* from deeds defectively recorded, see *Johns v. Scott,* 5 Md. 81, note (*a*).  And as to constructive notice, see note to *Alexander v. Ghiselin,* 5 Gill, 104.

wife, on the 6th day of October, 1859, executed to Canby, a mortgage upon the said "Leila" farm, and which mortgage had been improperly admitted to record in Baltimore County. That Canby alleged that he had made advances to Hatch, to an amount exceeding $6,000, and threatened a sale of said property under the mortgage; that Canby had sold a large amount of the property of Hatch, and had then in his possession a large amount of collaterals, and that when all the sales were made, and *choses in action,* to be collected, were applied to the said indebtedness of Hatch to Canby, that said indebtedness would fall far short of $6,000.

The bill further stated that the mortgage of Hatch to Canby, although it purported on its face to be acknowledged by Hatch and wife, in Baltimore County, was, in fact, acknowledged *in Baltimore City, in St. Paul street, before a certain **213** George W. Ritter, a Justice of the Peace of Baltimore County; that the affirmation of the consideration stated in the mortgage was made by Canby before the same person at the same place and at the same time; that Ritter had no jurisdiction to take the acknowledgment, or administer the oath in Baltimore City, and that his acts in that behalf were void, and they were not validated by the covinous attempt to make it appear that, in fact, the acknowledgment and affirmation were made in Baltimore County. That said mortgage was void and of no effect as against the complainants, judgment creditors and a purchaser for value and without notice, and that they had a right to the interposition of the court as a Court of Equity, to have said mortgage declared void, and the property disencumbered of the cloud thrown upon their title by it.

The bill prayed that the mortgage from Hatch to Canby, might be declared null and void as against the appellants, and that Canby might be restrained, by injunction, from proceeding to foreclose the same, and for general relief. Thomas Y. Canby, Charles B. Hatch and his wife and Sarah E. Townsend, who had survived her husband, were made defendants, and filed separate answers. The answer of Sarah E. Townsend stated the amount of purchase money due for said farm, by Hatch, to be $1,000, with interest.

The answer of Canby admitted the rendition of the judgment in favor of Johnston Brothers & Co., but insisted that the amount

claimed to be due on the same, was not really due. That he was informed, and believed that, upon a proper adjustment of accounts between Hatch and them, very little would be found due. That he had no knowledge of the sale to complainant, Fisher, more than appeared upon the face of the deed. He ad-- mitted the execution of the bond of conveyance from Townsend and wife and also the mortgage of Hatch to himself, and alleged that he had made large advances, and incurred large **214** liabilities, upon the security of said mortgage, *and that there was then due on said mortgage more than $7,000, over and above all payments, avails of collaterals, receipts and setoffs, for which said mortgage was held, as the only available security. He insisted that forasmuch as Ritter, before whom his mortgage was acknowledged, and the affirmation of consideration made, was a Justice of the Peace of Baltimore County, when said acknowledgment and affirmation were made ; that said acknowledgment and affirmation were as valid if made in Baltimore City, as if made in Baltimore County, and that the certificate of said justice, as made upon said mortgage, not only justified, but made it the duty of the Clerk of the Circuit Court for Baltimore County to record the same, and that the said recording was sufficient notice of said mortgage. He insisted also on the Act of 1852, ch. 86, and that Johnston Brothers & Co. had express notice, when they obtained the judgment, of the mortgage of Hatch to Canby, and the indebtedness upon which it was founded; that the judgment of Johnston Brothers & Co., was confessed upon a past and foregone consideration, and not for any consideration, for which the security of said judgment was parcel; that the complainant, Fisher, when he purchased at the Sheriff's sale, had full and actual notice of the mortgage, and purchased because of the existence of the supposed defect in it.

The answer of Hatch was substantially to the same effect. A general replication was entered and issue was joined, and a large amount of testimony taken under a commission. From the view presented and the conclusion reached by the court, a statement of the evidence is deemed unnecessary. The court below (Martin, J.,) after hearing, delivered the following opinion:

" In this case it is clearly established by the uncontroverted testimony of Charles B. Hatch, that the Messrs. Johnston,

when they obtained their judgment against him on the 21st of November, 1860, had actual notice of the mortgage of the 6th of October, 1859, from the said Hatch to Thomas Y. Canby, and it is equally clear from the evidence that when *Mr. Fisher purchased the equitable interest of Hatch, in **215** the property covered by the mortgage at the Sheriff's sale, under the writ of *fieri facias,* issued on the judgment of condemnation of *Brehme v. Hatch,* mentioned in the proceedings, he also had actual notice of the existence of the said mortgage.

" The real estate embraced by this mortgage was situated in Baltimore County, and the paper contains the affirmation required by sec. 112 of the conveyancing Act of 1856, ch. 154, but although the certificate as to the acknowledgment of the mortgage, and the affirmation of the mortgagee, was formal upon its face, and as of the *venue* of Baltimore County, yet it was open to the parties claiming against the mortgage, to show by parol evidence that it was in fact acknowledged in the City of Baltimore, before a Justice of the Peace of Baltimore County, and this being so, it is clear that the paper is to be treated as an instrument neither acknowledged or recorded as required by the Act of 1856, ch. 154, and without the affirmation as to the consideration, demanded by sec. 112 of that Statute.

"These imperfections in the mortgage would be most important, if the contest in this case depended on the question whether the Messrs. Johnston had at the time they obtained the judgment against Hatch, and Mr. Fisher had at the period of his purchase constructive notice of the existence of the mortgage; or if the legal estate had been conveyed to Canby, by this mortgage, and he had brought an action of ejectment for the purpose of recovering the possession of the land standing upon this deed, it might well have been said that as the mortgage was not properly acknowledged, and was not duly recorded, and was to be treated as not having the affirmation in reference to the consideration required by the Act of 1856, ch. 154, it could not be regarded in a court of law, as passing the legal title. *Cockey v. Milne,* 16 Md. 200. But the case before me is not embraced by these questions. There was actual notice both on the part of the Messrs. Johnston and Fisher, of the existence of this *mortgage, which although inoperative as a deed **216** at law, is always regarded as the written evidence of a valid

contract enforceable in equity, and carries with it an equity binding on the conscience of all those who deal with the property to which it relates, with actual knowledge of its existence. There is certainly some diversity of opinion on this question among the jurists, but the proposition above stated contains, I think, the true and sound doctrine. *Le Neve v. Le Neve,* 3 Atk. 646; *Goslin's Case,* 3 Simon, 303; *Taylor v. Wheeler,* 2 Vernon, 564; *Massey v. McIlvain,* 2 Hill Ch. 428; *Alexander v. Ghiselin,* 5 Gill, 181; *Price v. McDonald,* 1 Md. 403.

" The complainants appear in a Court of Equity, invoking the interposition of the court to pronounce the mortgage in question to be void as against them, and to restrain the mortgagee from foreclosing the mortgage and selling the estate, and necessarily calling into action and subjecting themselves to all the principles by which a Court of Equity is controlled and governed in the adjustment and application of conflicting liens; and I think that, in equity, the correct principle is, that when the Johnstons obtained their judgments, and Mr. Fisher acquired the estate which he seeks to claim as a purchaser at the Sheriff's sale, they did so in subjection to the prior equitable right of Canby, and of which they had ample and actual notice. In the argument of the counsel of the complainants, reliance was placed on the words of sec. 112 of the Act of 1856, ch. 154, where it is declared that no mortgage shall be valid except between the parties thereto, unless there is indorsed on the paper an affirmation as to the consideration; but in the West Riding Registry Act of Ann, the words were as stringent and denunciatory as those to be found in the Maryland Act, for they were 'that judgments shall have no effect until they are registered,' yet, Lord Hardwick, in his masterly judgment in the leading case of *Le Neve v. Le Neve,* held that a purchaser with actual notice of the unregistered judgment should be bound by it. The same *principle was applied by the Vice-Chancellor on the Middlesex Act in *Goslin's Case,* 3 Simon, 303, and is in accordance with the doctrine that lies at the foundation of the decision of the Court of Appeals in *Alexander v. Ghiselin,* 5 Gill, 181. All these cases stand upon the firmly established principle, 'that the subsequent incumbrancer chargeable with actual notice of the pre-existing imperfect mortgage, shall, in a Court of Chancery, be postponed to it, upon the equity that

he had notice of it, and it is entirely unimportant whether the imperfection in the mortgage which would render it invalid and inoperative in a court of law, arises from the fact that it was not properly acknowledged or not duly recorded, or had not endorsed upon it an affirmation as to the nature of the consideration which was required by the Statute.

" For these reasons, irrespective of any other questions that have been agitated in the case, I will sign a decree dismissing the bill with costs."

A decree dismissing the bill was accordingly passed, and the complainants thereupon appealed.

The cause was argued before Bartol, C. J., Nelson, Brent, Miller and Alvey, JJ.

*William A. Fisher* and *William S. Waters*, for the appellants :

The court below held that the mortgage was to be treated as unacknowledged and unrecorded, but, misled by the general language of cases applicable only to the registry system, it held that there was no distinction, as to the result, between the absence of an acknowledgment and of an affirmation, and that the instrument could be supported as an equitable contract for a mortgage. *Cockey v. Milne,* 16 Md. 207, shows that there is a clear distinction between the two defects; that the Legislature has said in unequivocal terms that the instrument shall be *void* without the affidavit, and that the courts cannot legislate away this enactment by validating and rendering the instrument effective, *as an equitable contract, for the accomplish- **218** ment of the same purposes claimed for it as a mortgage. A Court of Equity cannot supply any circumstance, the want of which makes the instrument *void.* 1 Story's Eq. secs. 97, 177; *Bolton v. Williams,* 2 Ves. Jr. 138, 152, 153; *Hood v. Burton,* 2 Ves. Jr. 34; *Curtis v. Perry,* 6 Ves. 745; 1 Parsons Maritime Law, 56, *note; Hughes v. Morris,* 12 Eng. Law & Eq. 296, 297; *Tuton v. Sanoner,* 3 Hurlstone & Norman, 280; *Allen v. Thomson,* 1 *Ib.* 15.

There is no superior ground of equity in the appellee, Canby, who had already received the entire benefit of all of Hatch's property in the city. The mortgage in the county had been executed before the complainants were aware of it, and they did

not become acquainted with the defect in the instrument until shortly prior to the filing of the bill in this case. Under such circumstances, there was no want of equity on the part of the complainants in seeking to avail themselves of the absence of the affidavit—it was their right to do so. *Tongue v. Nutwell,* 17 Md. 230; *Denton v. Griffith,* 17 Md. 305.

The remedy was properly sought in a Court of Equity. There is in the defendant, Hatch, an equitable title surely, and a discovery was necessary to ascertain what amount was due upon the bond of conveyance, executed by Townsend to Hatch. 1 Story's Eq. sec. 71; *Holland v. Balt.* 11 Md. 197.

The Johnstons, as judgment creditors, were entitled to the interposition of a Court of Equity. The purchaser under the attachment proceedings was also entitled. The proceedings were in accordance with the Code, but, at any rate, they cannot be collaterally impeached. The Circuit Court for Baltimore County is of general jurisdiction, and any irregularity in its proceedings must be brought to its attention directly. Code of Pub. Gen. Laws, Art. 10, sec. 25; *Barr v. Perry,* 3 Gill, 314; *Lambden v. Bowie,* 2 Md. 334.

**219**    *\*S. Teackle Wallis* and *Henry C. Kennard,* for the appellees:

The evidence clearly shows, that the Messrs. Johnston, when they obtained judgment against Hatch, and even throughout their prior dealings with him, had notice, full and actual, of the existence of the mortgage. They not only knew it, but requested Hatch to ask Canby's permission to give them the judgment, which Hatch refused to give, and never would have given, without Canby's consent, so obtained. They then and afterwards recognized Canby's lien at all times, till put, as they thought, in the way of getting rid of it by a formal, technical and wholly inequitable objection. Under such circumstances, their assertion of a priority, in prejudice of Canby's known title, is a fraud, in fact as well as in law, and as such, comes emphatically within the familiar principle, by which parties having notice of a prior encumbrance, defective at law, are forbidden to set up title against it. *U. S. Ins. Co. v. Shriver,* 3 Md. Ch. 385; 1 Story's Eq. secs. 397, 398; *Winchester v. Balt. & Susq. R. R. Co.* 4 Md. 239; *Price v. McDonald,* 1 Md. 414, 422; *Willard v.*

*Ramsburg,* 22 Md. 217; *Gen. Ins. Co. v. U. S. Ins. Co.* 10 Md. 529; *Le Neve v. Le Neve,* 2 Lead. Cases in Equity, 122, 131, 132; *Baltimore v. Williams,* 6 Md. 265.

Nor do the cases of *Cockey v. Milne,* 16 Md. 207, and *Denton v. Griffith,* 17 Md. 305, militate against this view, for there was no question, in those cases, of notice on the part of the attaching creditor, and the language of the Act of 1846, ch. 271, is no more stringent or exclusive in its legal effect than the recording laws which are equitably construed to exclude parties having notice, in the cases cited under the above point. The error of the appellants' argument consists in supposing that the appellees rely on notice of a defective instrument, only; whereas the strength of Canby's case lies in the fact, that they had notice of his equities arising out of the considerations on which the instrument was executed. *Bryan v. Hawthorne,* 1 Md. 519; *\*Baynard v. Norris,* 5 Gill, 483; *Phillips v.* **220** *Pearson,* 27 Md. 242; 1 Story's Eq. secs. 395, 397; *Alexander v. Ghiselin,* 5 Gill, 180, 181; *Le Neve v. Le Neve,* 2 Lead. Cases in Equity, 23, 35; *Tunstall v. Trappes,* 5 Cond. Eng. Ch. 123; *Ing v. Brown,* 3 Md. Ch. 525.

The complainant, Fisher, stands, as to notice, precisely on the same ground as the Johnstons, although his case is, of course, free from the moral imputations which justly attach to the latter. *Hampson v. Edelen,* 2 H. & J. 64; *Alexander v. Ghiselin,* 5 Gill, 180, 1; *Le Neve v. Le Neve,* 2 Lead, Cases in Equity, 109, 122; Story's Eq. Pl. 807, *A.*

The Johnstons were not *bona fide* purchasers, in any sense, their judgment having been given for a past consideration, and Hatch proves, besides, that the indebtedness which existed when it was given, has since been paid. *Jones v. Hardesty,* 10 G. & J. 420; *Ratcliffe v. Sangston,* 18 Md. 383.

Bartol, C. J., delivered the opinion of the court.

It is unnecessary to express any opinion in this case, upon the question of the jurisdiction and authority of George W. Ritter, the Justice of the Peace of Baltimore County, to take the acknowledgment of the mortgage from Hatch and wife to Canby, or to take the affirmation of the mortgagee to the

truth and *bona fides* of the consideration thereof, out of the limits of Baltimore County, and within the City of Baltimore.

Conceding that the appellants are correct in the position taken by them, that neither the acknowledgment nor the affirmation was made as required by the Act of 1856, ch. 154, sec. 112, we are of opinion that the mortgage is good in **221** *equity against the appellants for the reasons, and upon the authorities stated in the opinion of the Judge of the Superior Court. We refer also to *Phillips v. Pearson*, 27 Md. 242, in support of the principles upon which the decree below was passed.

A decree will be signed affirming the decree of the Superior Court, from which this appeal was taken, with costs to the appellees. ' · *Decree affirmed.*