910 A.2d 1072

## The STANDARD FIRE INSURANCE, CO.

v.

## Robert C. BERRETT.

## No. 8, Sept. Term, 2006.

Court of Appeals of Maryland.

Nov. 13, 2006.

**440**

Steven M. Klepper (Kramon & Graham, P.A., on brief), Baltimore, MD, for Petitioner.

David K. Stesch (Patricia S. Steiger of Law Offices of Seymour R. Goldstein, on brief), Baltimore, MD, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, Judge.

This action arises out of the refusal by the Petitioner, The Standard Fire Insurance, Co., to pay a claim on a homeowner's insurance policy taken out by Respondent, Robert Berrett, on 4305 Gallatin Street, a property which was destroyed by fire, after approval of a contract of sale on the property by a circuit court judge in guardianship proceedings for his mother, Charlotte Berrett, but before settlement. Standard Fire filed a petition for writ of certiorari seeking review of the Court of Special Appeals's judgment reversing the Circuit Court for Baltimore City's entry of summary judgment for Standard Fire and raised the following questions:

1. When a person holds an unrecorded deed, pursuant to which grantor conveys to him a vested remainder and retains a life estate, does the court-ordered sale of the

property in fee simple, in an action to which the grantee is a party, extinguish the grantee's interest in the property?

2. Under the scenario described above, do the grantee's representations to the court that grantor owns the property, coupled with his failure to raise an interest in the property, estop him from claiming such an interest by virtue of the unrecorded deed or improvements to the property?

3. If a person fails to protect his economic interest in a property, does he retain an insurable interest in that property?

*Standard Fire Ins. v. Berrett,* 393 Md. 160, 900 A.2d 206 (2006).

We shall hold that Mr. Berrett continued to possess an economic interest in the property even after the court's approval of the contract of sale of the property, and that he was not estopped from claiming an insurable interest therein by his representations that his mother was the owner of the property during guardianship proceedings.[1]

### *Facts*

In December, 1995, Robert Berrett relocated from California, where he had been living for some twenty years, to his home state of Maryland and began residing at 4305 Gallatin Street, his family's home. In February, 1999, after having made numerous improvements to the home, he learned that it was not insured, which precipitated his application for insurance with Standard Fire. Mr. Berrett timely paid all of the premiums on the policy and, when it expired in February, 2000, renewed for another year.

In March, 2000, Mr. Berrett filed a verified petition, through counsel, in the Circuit Court for Prince George's County, to be appointed guardian over the person and proper-

---

1. We do not address the third question separately because it was not briefed, nor argued, as a unique issue, but incorporated in the presentation of the first issue.

ty of his mother, Charlotte Berrett. He alleged that he was her primary care taker and that she was no longer able to handle her financial, business, legal, and personal matters. He also alleged that his mother "owns two parcels of real estate commonly known as 4305 Gallatin Street, Hyattsville, Maryland 20783 and 2303 Fordham Street, Hyattsville, Maryland 20783," and listed himself and his four siblings as interested parties to the proceedings. Mr. Berrett filed a verified amended petition in May, 2000, in which he again alleged that his mother owned 4305 Gallatin Street, and a verified emergency petition in June, iterating that she owned 4305 Gallatin Street. After a hearing on Mr. Berrett's petition, a judge of the Circuit Court for Prince George's County appointed Richard C. Daniels, an attorney, as the guardian of Charlotte Berrett's property, and Theresa Grant of the Prince George's Office of Aging, as guardian of her person. Shortly thereafter, Mr. Daniels petitioned the court for approval of a contract of sale for $89,000.00 for 4305 Gallatin Street, to which Mr. Berrett filed an opposition, alleging that the purchase amount was below market value, that the sale was not necessary to sustain his mother's care because he was supplementing her payments to the nursing home, and that his mother intended to reside at 4305 Gallatin Street in the future. The court overruled Mr. Berrett's opposition and on November 9, 2000, approved the contract. On November 25, 2000, fire destroyed the home before settlement and thereafter the purchaser exercised his right to rescind, pursuant to the contract's risk of loss clause, and the home was razed and the property subsequently sold to the same purchaser for a reduced price of $40,000.00.

In the interim, Mr. Berrett filed a claim for $388,000.00 with Standard Fire to recover for the loss of the home. Standard Fire denied the claim, alleging that the court-approved sale of 4305 Gallatin Street extinguished Mr. Berrett's interest in the property so that he did not possess an insurable interest at the time of the loss.

In his complaint against Standard Fire,[2] Mr. Berrett alleged that he had an insurable interest in 4305 Gallatin Street because his mother, in an unrecorded deed, had conveyed a remainder interest to him in the property,[3] while retaining for herself a life estate, and also because Mr. Berrett had resided in and made extensive improvements to the home between 1995 and 2000. He alleged that he never recorded the deed because, by the deed's terms, it was not to be recorded until his mother's death. He further alleged that he did not disclose the existence of the unrecorded deed during the guardianship proceedings because he was under the impres-

---

**2.** Mr. Berrett's complaint originally named Travelers' Property Casualty, Weaver Brothers Insurance Association, Inc. and Eleanor Cruz, both individually and as the agent of Weaver Brothers, as defendants but later dismissed his claims against Weaver Brothers and Cruz. Mr. Berrett also amended his complaint to reflect the correct name of the insurance company as The Standard Fire Insurance Company.

**3.** The deed states:
> This warranty DEED is made on August 4, 1973 by Charlotte Helen Berrett and herein delivered to Robert Carlyle Berrett, Charlotte Berrett's address being 2304 Fordham Street, Hyattsville, Md., and Robert Berrett's address being 4305 Gallatin Street, Hyattsville, Md. In consideration of the following improvements to my real property, my residence, 2304 Fordham Street, performed by my Son, Robert Carlyle Berrett, (Such improvements consisting of installation of a two bedroom apartment in the basement of my residence at 2304 Fordham Street, including installation of a code approved concrete block exterior basement entrance, installation of plumbing for a complete basement bath and kitchen, laundry room, and partitions for two bedrooms one bath, living room two closets and a mechanical room containing water heater and furnace with a drainage system and sump pump installed, and major alterations to the existing heating system),
> I hereby and herein grant to and deliver to my son, Robert Carlyle Berrett all that property situated in Prince George's County, Md. known as 4305 Gallatin Street, Hyattsville, Md., and described as Lot 17, Block B, 2nd Addition to Wines and Johnson Subdivision in Hyattsville, Md.
> I covenant that I warranty the property specifically.
> It is further agreed herein and the right is reserved by me that I shall retain a life estate in the above described Gallatin Street property and that I shall for my life be entitled to all rents arising out of the property.
> It is further agreed that this DEED shall not be recorded until after my death, the death of me, Grantor of this DEED.

sion that his mother's life tenancy enabled her to dispose of the property.

In response to Mr. Berrett's complaint, Standard Fire filed a motion for summary judgment, alleging that the judicial approval of the sale of 4305 Gallatin Street on November 9, sixteen days before the fire, had extinguished Berrett's insurable interest in the property. Standard Fire also argued that, because Mr. Berrett alleged in his verified petitions for his mother's guardianship that his mother was the owner of 4305 Gallatin Street, that he now was precluded under both the doctrines of collateral estoppel and estoppel by admission from asserting his claim in the property.

Mr. Berrett responded by alleging that, as a remainderman in the property, he could not be divested of his interest until the property was sold and, at the time of the fire, the sale had not been completed. He further contended that he was not collaterally estopped from asserting his insurable interest because the issue during the guardianship proceedings was whether Charlotte Berrett was disabled, whereas, in the Standard Fire proceedings, the issue was whether Mr. Berrett possessed an insurable interest in the property. Moreover, Mr. Berrett maintained that his allegation that his mother was the owner of the property in the guardianship proceedings was not inconsistent with his statement of ownership during proceedings on the insurance claim because both possessed ownership interests in the property; his mother's of a life estate interest, and his of a remainder interest.

After the hearing on Standard Fire's summary judgment motion, at which both parties were represented by counsel and presented oral arguments, the trial court granted summary judgment to Standard Fire, concluding that Mr. Berrett was both collaterally and judicially estopped from asserting an insurable interest in the property. Mr. Berrett noted a timely appeal to the Court of Special Appeals, which determined in a reported opinion that, by virtue of the unrecorded deed, Charlotte Berrett had, after retaining a life estate for herself, granted Mr. Berrett a vested, indefeasible remainder in 4305

Gallatin Street, which was deemed to be an insurable interest. *Berrett v. Standard Fire Ins. Co.*, 166 Md.App. 321, 338, 888 A.2d 1189, 1196, 1199 (2005). The intermediate appellate court held that the court's approval of the sale of the property did not negate Mr. Berrett's economic interest in the property because, even if the sale of the property had been completed at the time of the fire, Mr. Berrett would have had a chose in action against the guardianship estate for his share in the sale proceeds as a remainderman. Thus, the Court of Special Appeals concluded that Mr. Berrett did possess an economic, and therefore an insurable, interest in the property at the time of the fire. The court also determined that the doctrine of collateral estoppel did not apply to Mr. Berrett's action to recover from Standard Fire because the guardianship proceedings did not address the nature of Mr. Berrett's interest in 4305 Gallatin Street and that the doctrine of judicial estoppel did not apply because Mr. Berrett never took a position regarding his own interest in the property during the guardianship proceedings which were inconsistent with his assertions in the insurance claim proceedings.

Before this Court, Standard Fire contends that, under Section 12–301(a) of the Insurance Article, Maryland Code (1997), an economic interest in property must be present in order to constitute an insurable interest therein. Standard Fire asserts that, when the contract of sale of the property was approved by the circuit court on November 9, 2000, Mr. Berrett's economic, and therefore insurable, interest in the property was extinguished because only Charlotte Berrett would benefit from the proceeds of the sale. Standard Fire also alleges that the court in the guardianship proceeding made a final determination that Charlotte Berrett was the owner of 4305 Gallatin Street, and that Mr. Berrett was a party in those proceedings. The Company maintains, as a result, that Mr. Berrett was required to assert his ownership interest during the guardianship proceedings and is now barred by the doctrine of collateral estoppel from claiming an ownership interest in the property. Standard Fire also claims that Mr. Berrett is precluded under the doctrine of judicial

estoppel from alleging that he was the owner of the property because he stated in all of his verified petitions for guardianship that his mother was the owner of 4305 Gallatin Street.

Conversely, Mr. Berrett claims that, as owner of a vested, indefeasible remainder in 4305 Gallatin Street, he possessed an insurable interest in the property of which he was not divested by the court's approval of the contract of sale. Mr. Berrett maintains that whether a party possesses an insurable interest in a property is determined at the time of the loss, and that, at the time of the loss in this case, the sale of 4305 Gallatin Street had not been completed and thus, his insurable interest was not extinguished. Mr. Berrett also claims that, even if the sale had been completed at the time of the fire, his remainder interest would not have been entirely lost, but instead, translated into a right to the proceeds, which constitutes a chose in action and thereby an insurable interest. Mr. Berrett further alleges that any claim of nonmutual collateral estoppel fails because the issue of his insurable interest in the property was not fully litigated during the guardianship proceedings. Mr. Berrett also contends that judicial estoppel does not apply in this case because the doctrine requires that he have taken an inconsistent position in the guardianship proceedings in order to gain an unfair advantage in those proceedings, which he did not.

### *Discussion*

The entry of summary judgment is governed by Maryland Rule 2–501, which provides in pertinent part that:

> (f) **Entry of judgment.** The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

The question of whether the trial court properly granted summary judgment is a question of law and is subject to *de novo* review on appeal. *Miller v. Bay City Property Owners Ass'n Inc.*, 393 Md. 620, 632, 903 A.2d 938, 945 (2006), quoting

*Myers v. Kayhoe,* 391 Md. 188, 203, 892 A.2d 520, 529 (2006); *Ross v. State Bd. of Elections,* 387 Md. 649, 658, 876 A.2d 692, 697 (2005); *Todd v. MTA,* 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707, 721 (2002). If no material facts are in dispute, we must determine whether summary judgment was correctly entered as a matter of law. *Ross,* 387 Md. at 659, 876 A.2d at 698; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Beyer,* 369 Md. at 360, 800 A.2d at 721. On appeal from an order entering summary judgment, we review "only the grounds upon which the trial court relied in granting summary judgment". *Ross,* 387 Md. at 659, 876 A.2d at 698, quoting *Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844, 849 (2003), quoting in turn *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001).

There are two issues in this case: the first, whether the judicial approval of the contract of sale of 4305 Gallatin Street divested Mr. Berrett of his insurable interest in the property at the time of the fire, and the second, whether Mr. Berrett is estopped from asserting that interest by his actions during the guardianship proceedings for mother, Charlotte Berrett. We conclude that Mr. Berrett possessed an insurable interest in the property at the time of the fire and that he was not estopped from asserting that interest because of what he said and did during his mother's guardianship proceedings.

## A. Effect of the Court's Approval of the Contract of Sale on Mr. Berrett's Insurable Interest

██ Standard Fire alleges that, because the circuit court had approved the sale of 4305 Gallatin Street on November 9, 2000, Mr. Berrett no longer possessed an economic interest in the property on November 25 when the home was destroyed by fire. We disagree.

"Insurable interest" is defined in Section 12–301 of the Insurance Article, as

an actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance against loss, destruction, or pecuniary damage or impairment to the property.

Maryland Code (1997), Section 12–301(a) of the Insurance Article. Whether an individual holds an insurable interest is defined statutorily at the time of the loss, rather than at the time of the contract. Maryland Code (1997), Section 12–301(b) of the Insurance Article. Mr. Berrett contends that he owned an indefeasible, vested remainder, which constitutes an insurable interest at the time of the fire.

A vested, indefeasible remainder is "a present, fixed right to future enjoyment, and is an estate which the owner can convey or devise or which descends in case of intestacy to his heirs." *Myers v. Myers,* 185 Md. 210, 221, 44 A.2d 455, 460 (1945). A remainder interest is "any future interest limited in favor of a transferee in such manner that it can become a present interest upon the expiration of all prior interests simultaneously created, and cannot divest any interest except an interest left in the transferor." 2 Restatement of Property § 156, at 535 (1936). The term "vested" connotes that the assumption of the estate by the remainderman is not contingent upon any prerequisites, but rather the remainderman stands "ready to take [the property] immediately on the termination of prior … estates." *In re Trust of Lane,* 323 Md. 188, 195 n. 4, 592 A.2d 492, 496 n. 4 (1991), quoting 1 *American Law of Property* § 4.2, at 408 (A. James Casner ed. 1952). "Indefeasible" means that the person granted the future interest cannot be divested of that interest. *In re Trust of Lane,* 323 Md. at 197, 592 A.2d at 497 (holding that remainder interest was defeasible because the interest "may be defeated by a subsequent occurrence before the termination of the precedent estate").[4]

---

4. The deed conveying an indefeasible, vested remainder in this case was never recorded pursuant to Maryland law. Maryland Code (1974, Repl. Vol. 1996), Section 3–101(a) of the Real Property Article ("[N]o estate of inheritance or freehold, declaration or limitation of use, estate above seven years, or deed may pass or take effect unless the deed granting it is executed and recorded."); Maryland Code (1974, Repl. Vol. 1996), Section 3–103 of the Real Property Article (requiring that all conveyances of real property be recorded in the county where the land affected by the deed lies). The central purpose for the recording requirement is:

██ We explored the insurable interests of remaindermen and life tenants in *Forbes v. American International Insurance Co.*, 260 Md. 181, 271 A.2d 684 (1970), when faced with the question of whether a succeeding life tenant was entitled to the proceeds of a fire insurance policy procured by the preceding life tenant. In explicating the general rule, we explained that:

> [T]he dictum found in *Legge v. Canty* shows rather clearly that this Court some years ago manifested a disposition to follow the general rule were the issue to be presented to it. In that case Judge Offutt, writing for the Court, stated:
>
> Ordinarily, in the case of a life tenancy the life tenant would insure his interest, and the remaindermen would insure their interests.

*Id.* at 186, 271 A.2d at 686 (citations omitted), quoting *Legge v. Canty*, 176 Md. 283, 289, 4 A.2d 465, 468 (1939). By so stating, we adopted the majority view that, absent a contract or fiduciary duty, neither the life tenant, nor the remainderman, is obligated to insure the other's interest, but rather, both must individually insure his or her own interest. *Forbes*, 260 Md. at 184–85, 271 A.2d at 685, quoting *Thompson v. Gearheart*, 137 Va. 427, 119 S.E. 67, 68 (1923). Therefore, a remainderman does have an insurable interest.

---

> [T]o provide a way to give notice to purchasers, mortgagors, lien holders and the like, of the prior conveyances of, or encumbrances on, the property of a particular person. Recording and indexing was not necessary to determine title to property as between the seller and buyer but only to determine priorities as between subsequent claimants to title interests, i.e., third parties. . . .
>
> *Greenpoint Mortg. Funding, Inc. v. Schlossberg*, 390 Md. 211, 230, 888 A.2d 297, 308–09 (2005). The fact that a deed was never recorded does not negate its binding effect, however, upon the grantor and grantee; it is still a valid contract between those two parties, and also is a binding contract with respect to third persons with actual notice of the deed. *Balt. Transit Employees' Credit Union v. Thorne*, 214 Md. 200, 206, 134 A.2d 84, 86 (1957); *Johnston v. Canby*, 29 Md. 211, 215–16 (1868); *Hudson v. Warner*, 2 H. & G. 415, 422–23 (1828). Thus, the unrecorded deed in this case would be effective as between Charlotte Berrett and Robert Berrett and third parties with actual notice thereof.

■ Did, however, the court's approval of the contract of sale of the property in this case divest Mr. Berrett of his insurable interest as a remainderman? It is well settled in Maryland that a contract of sale of real property vests equitable title to the property in the purchaser, while the seller retains legal title. We addressed this distinction in *Himmighoefer v. Medallion Industries, Inc.*, 302 Md. 270, 487 A.2d 282 (1985), in which a construction vendor attempted to obtain a mechanic's lien against a property after the owner had entered into a contract for its sale. Holding that the creditor could not obtain a lien on the property, we explained that the

effect of such a contract is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor pending the fulfilment of the contract and the formal conveyance of the estate. The right of the vendee to have the title conveyed upon full compliance with the contract of purchase is not impaired by the fact that the vendor, subsequently to the execution of the contract, incurred a debt upon which judgment was recovered.

*Id.* at 279, 487 A.2d at 287, quoting *Kinsey v. Drury*, 146 Md. 227, 232, 126 A. 125, 127 (1924). *See also Knight v. Princess Builders, Inc.*, 393 Md. 31, 49, 899 A.2d 156, 167 (2006); *DeShields v. Broadwater*, 338 Md. 422, 438, 659 A.2d 300, 307 (1995); *Watson v. Watson*, 304 Md. 48, 60, 497 A.2d 794, 800 (1985).

In *Kingsley v. Makay*, 253 Md. 24, 251 A.2d 585 (1969), we addressed whether a judgment entered against a purchaser of real property established a lien on the property where the judgment was obtained after the purchaser entered into the contract of sale, and after he had assigned his interest in the property to another party. In holding that the judgment did not establish a lien on the property, we explained that the assignment of the purchaser's equitable interest in the property was valid, despite never being recorded, because there was no requirement that a contract of sale be recorded. *Id.* at 28, 251 A.2d at 587. The contract of sale, vesting equitable title in the purchaser, as we explained, is distinguishable, however,

from the completion of the sale in that "legal title to land, of course, does not pass, other than by operation of law, until a deed is properly executed and recorded." *Id.* at 27, 251 A.2d at 587. *See also* Maryland Code (1974, Repl. Vol. 1996), Section 3–101(a) of the Real Property Article; *Childs v. Ragonese,* 296 Md. 130, 139 n. 8, 460 A.2d 1031, 1036 n. 8 (1983) (acknowledging that in Maryland, legal title does not pass until the deed is executed and recorded). In the present case, settlement had not occurred, so that a deed to the property in the judicially-approved purchaser's name had not been executed, nor recorded.

We have acknowledged that an insurer remains responsible to indemnify the insured seller on losses incurred after the contract is entered into, but before the sale of the property is completed. In *Washington Fire Insurance Co. v. Kelly,* 32 Md. 421 (1870), two insurers denied claims made after fire had destroyed the insured's property, contending, among other things, that the insurance contracts were rendered null and void by the insured's contract to sell the property entered into before the time of the fire. We agreed with the insurers in that,

> [t]here is no doubt that an insurance against fire without an interest in the subject-matter insured is a *wagering* contract, which the law does not sanction; and it is, therefore, necessary that the insured should have an interest in the property insured, not only at the time of the insurance, but when the loss by fire occurs. If the insured sell the property, and transfer all his interest therein, or assign all interest in the policy, before the loss happens, he cannot recover. . . .

*Id.* at 435–36 (emphasis in original). We determined, however, that to "prevent the recovery for any loss by fire, the sale or conveyance must be made out full and complete." *Id.* at 436. To constitute a complete sale "the right to the property sold and to the possession thereof, must pass from the vendor to the vendee." *Id.* at 436. A "mere contract for the sale or conveyance," however, will not divest "the title of the vendor

and vesting the same in the vendee," and therefore does not constitute a complete sale. *Id.* We held that the sale of the property was not completed at the time of the loss, and therefore "the insured as the vendors of the property, before the actual conveyance thereof, held an insurable interest therein." *Id.* at 437. Thus, a contract of sale of real property, taken alone, before settlement, will not negate the insured's ability to recover from a loss by fire.[5]

## B. Defensive Non-mutual Collateral Estoppel and Judicial Estoppel

### 1. Defensive Non-mutual Collateral Estoppel

Standard Fire claims that Mr. Berrett is barred under the doctrine of collateral estoppel from asserting his ownership interest in 4305 Gallatin Street because the issue of ownership was addressed in his mother's guardianship proceeding, to which he was a party.

The traditional doctrine of collateral estoppel, or issue preclusion, simply means "in a second suit *between the same parties,* even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment is conclusive." *Rourke v. Amchem Prods., Inc.,* 384 Md. 329, 341, 863 A.2d 926, 933 (2004) (emphasis in original), quoting in turn *Welsh v. Gerber*

---

**5.** We note that this conclusion is consistent with the general rule. *See Kentucky Farm Bureau Mut. Ins. Co. v. Conley,* 498 S.W.2d 122, 126 (Ky.1973) (stating that "[i]t is likewise the general rule that an executory contract of sale does not extinguish the vendor's insurable interest"), citing 15 *Couch on Insurance* 2d, § 54.227 (1984). *Aetna Casualty & Surety Co. v. Cameron Clay Prods., Inc.,* 151 W.Va. 269, 151 S.E.2d 305, 307 (1966) (holding that "a contract to sell insured real property, even though the insured has bound himself to convey upon the performance of certain conditions does not affect the validity of the insurance, and if a loss occurs before the conditions are performed, a recovery may be had by the insured ..."), citing *MacCutcheon v. Ingraham,* 32 W.Va. 378, 9 S.E. 260, 263 (1889). *Cf. Thurston Nat'l Ins. Co. v. Hays,* 260 Ark. 855, 544 S.W.2d 853, 854 (1977) (holding that purchaser had insurable interest in property at the time of the fire even though sale had not yet been completed and seller retained risk of loss until settlement).

*Prods. Inc.*, 315 Md. 510, 516, 555 A.2d 486, 489 (1989). *See also Colandrea v. Wilde Lake Community Ass'n*, 361 Md. 371, 387, 761 A.2d 899, 907 (2000), quoting *Janes v. State*, 350 Md. 284, 295, 711 A.2d 1319, 1324 (1998), quoting in turn *Murray Intl. v. Graham*, 315 Md. 543, 547, 555 A.2d 502, 504 (1989) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). The determination of ultimate fact underlying the judgment in a previous proceeding is the gravamen of the doctrine. *Colandrea*, 361 Md. at 391, 761 A.2d at 909. Its purpose is "to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Id.* at 387, 761 A.2d at 907, quoting *Janes*, 350 Md. at 295, 711 A.2d at 1324. Or, stated differently, collateral estoppel is "based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised . . . ." *Id.* at 391, 761 A.2d at 909.

 In its traditional form, collateral estoppel requires mutuality of parties, so that the doctrine would only apply when the same two parties in a previous law suit are involved in another law suit. *Rourke*, 384 Md. at 340–41, 863 A.2d at 933. This traditional notion of mutuality of parties is not always required, however, if one of the parties in the original case is involved in relitigating one of the issues determined against a different party in a successive suit. We explored this modification of collateral estopped in *Rourke v. Amchem Products, Inc., supra*, explaining:

If the plaintiff in the second case seeks to foreclose the defendant from relitigating an issue that the defendant previously litigated unsuccessfully *against other plaintiffs,* the doctrine invoked is *offensive* non-mutual collateral estoppel; if the defendant seeks to preclude the plaintiff from relitigating an issue that the plaintiff previously litigated

unsuccessfully *against other defendants,* the doctrine is referred to as *defensive* non-mutual collateral estoppel.

*Id.* at 341, 863 A.2d at 933 (emphasis added).

In the case before us, Mr. Berrett was involved in the guardianship proceedings as the petitioner, but Standard Fire was not, so that the doctrine being invoked by Standard Fire is that of defensive, non-mutual collateral estoppel. We have approved a four-part test for determining whether the doctrine of defensive, non-mutual collateral estoppel applies:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Colandrea,* 361 Md. at 391, 761 A.2d at 909; *Leeds Federal Savings and Loan Ass'n v. Metcalf,* 332 Md. 107, 117–18, 630 A.2d 245, 250 (1993). The gravamen of this test is

that the party to be bound must have had a full and fair opportunity to litigate the issues in question. When an issue was not *required to be litigated* and was *not in fact litigated,* the judgment ordinarily will not preclude its subsequent litigation.

*Gerber,* 315 Md. at 518, 555 A.2d at 490 (emphasis added).

We originally espoused the doctrine of defensive, non-mutual estoppel in *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A.2d 100 (1968), in which a real estate broker, Perusse, entered into a contract to sell the home of the Longs, who were divorcing. When Perusse located a buyer, Mrs. Long refused to consummate the sale, and Perusse sued the Longs for the commissions he alleged were owed to him. Mrs. Long had since moved out of state, however, and could not be served with process so that Perusse only proceeded against Mr. Long. The Court determined that Perusse had failed to provide evidence of a ready, willing and able purchaser and

dismissed the action against Mr. Long; Perusse subsequently sued Mrs. Long. Adopting the doctrine of defensive, non-mutual estoppel, we held that Perusse was estopped from suing Mrs. Long because:

> Perusse, in its suit against [Mr. Long], had its full day in court and full opportunity to win on its claim that it procured a buyer ready, willing and able to buy at the seller's price. Its claim was decided against it. There can be no doubt that it sought to relitigate that precisely identical issue in the attachment against [Mrs. Long]. Public policy against repetitive identical litigation, which underlies the rule of res judicata, applies here with logic and force to provide that Perusse's rights were satisfied by having had its day in court on an issue, and that it is not entitled to another day in court against a particular defendant on that issue.

*Id.* at 45, 238 A.2d at 107–08.

Further, in *Welsh v. Gerber Products, Inc., supra,* the Welsh's son was injured when his car seat failed to restrain him during an accident. The Welshes sued both the driver of the other vehicle involved in the accident and Gerber, the car seat manufacturer, and subsequently settled with the other driver for his insurance policy limits. Gerber invoked the doctrine of defensive, non-mutual collateral estoppel, arguing that the Welshes were precluded from relitigating the issue of the amount of their damages because they had accepted the policy limit of the negligent party's insurance. In answering the certified question of law from the federal district court as to whether a consent judgment would preclude the Welsh's action against Gerber for damages, we stated:

> As a factual matter, a consent judgment may, or may not, involve a determination of the amount that represents the complete equivalent of the plaintiff's damages. Where, as apparently is the case here, the parties make no attempt to agree upon or litigate the fair value of the claim, but agree instead to accept the available insurance coverage while specifically reserving the right of the plaintiff to proceed against others for full compensation, a consent judgment

entered to give effect to the agreement does not in fact represent the result of litigation of the issue of damages. *Id.* at 518–19, 555 A.2d at 490.

By comparison, in *Leeds Federal Savings and Loan Ass'n v. Metcalf, supra,* we held that the doctrine of defensive, non-mutual collateral estoppel did apply. In that case, the Metcalfs brought simultaneous actions against Leeds Federal Savings and Loan Association and Ms. Buppert, alleging that the passport savings accounts held jointly by the Metcalfs and Ms. Lanahan was closed by Ms. Buppert without Ms. Lanahan's authority. In the action against Ms. Buppert, the Circuit Court for Carroll County found that she had acted under the authority of Ms. Lanahan and granted summary judgment for Ms. Buppert. In the action against Leeds in the Circuit Court for Baltimore City, the bank invoked the doctrine of defensive, non-mutual collateral estoppel. In applying estoppel, we concluded that:

> In the instant case the issue sought to be relitigated by the Metcalfs ... was essential to the decision of the Circuit Court for Carroll County, and it was resolved adversely to the Metcalfs. That issue also was central in the instant case.... The judgment of the Circuit Court for Carroll County was final; the Metcalfs were parties to that adjudication; and the Metcalfs were given a fair opportunity to be heard on the issue in the Carroll County case. Consequently, we hold that the Metcalfs were precluded from relitigating the issue in the instant case.

*Id.* at 120, 630 A.2d at 251. *See also Attorney Grievance Comm'n v. Alison,* 349 Md. 623, 634, 709 A.2d 1212, 1217 (1998) (holding that the doctrine of defensive, non-mutual collateral estoppel did not apply because the issue litigated in the first law suit was not identical to the issue litigated in the subsequent law suit).

In this case, Standard Fire alleges that during the guardianship proceedings, the judge determined the ownership of 4305 Gallatin Street. We disagree. At the time of the fire, the court had not made a final determination as to the nature of

Charlotte Berrett's property interest in 4305 Gallatin Street; it had merely determined whether she was disabled and whether she was or could have been entitled to property or benefits.

Guardianship of property petitions are governed by the Maryland Rules of Civil Procedure and must contain verified statements concerning, among others:

(8) To the extent known or reasonably ascertainable, the name, address, telephone number, and nature of interest of all interested persons and all others exercising any control over the property of the estate.

* * *

(10) The nature, value, and location of the property of the minor or alleged disabled person;

(11) A brief description of all other property in which the minor or alleged disabled person has a concurrent interest with one or more individuals.

Maryland Rule 10–301(c).

Once the verified petition is filed, the court may appoint a guardian of the property if the judge determines that:

(1) The person is unable to manage his property and affairs effectively because of physical or mental disability, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, confinement, detention by a foreign power, or disappearance; and

(2) The person *has or may be entitled to* property or benefits which require proper management.

Maryland Code (1974, Repl. Vol. 1991), Section 13–201(c) of the Estates and Trusts Article (emphasis added).

In the present case, by November 9, 2000, when the court approved the contract of sale, but before the fire, the judge had not made any final determination as to the nature of Charlotte Berrett's interest in 4305 Gallatin Street, but only that whatever interest she owned could be sold for $89,000.00. Nor did the judge make any determination as to Mr. Berrett's remainder interest. Thus, the issue in the guardianship pro-

ceeding was not identical to the issue before the court in the insurance claim proceeding, nor was there a final judgment on the merits as to the issue of Mr. Berrett's ownership interest.

## C. Judicial Estoppel

Standard Fire also claims that Mr. Berrett was estopped by the doctrine of judicial estoppel from asserting his ownership rights in 4305 Gallatin Street because he alleged in his verified guardianship petitions that his mother was the owner of the property. The doctrine of judicial estoppel, or estoppel by admission, has been elucidated in a historical context by Judge Alan Wilner, writing for this Court in *Eagan v. Calhoun*, 347 Md. 72, 698 A.2d 1097 (1997):

> Maryland has long recognized the doctrine of estoppel by admission, derived from the rule laid down by the English Court of Exchequer in *Cave v. Mills*, that 'a man shall not be allowed to blow hot and cold, to claim at one time and deny at another.' In *Stone v. Stone*[, 230 Md. 248, 186 A.2d 590 (1962)] and *Wilson Brothers v. Cooey*[, 251 Md. 350, 247 A.2d 395 (1968)], we adopted the statement of that principle. . . .

> 'Generally speaking, a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.'

*Id.* at 87–88, 698 A.2d at 1105 (citations omitted). *See also Underwood–Gary v. Mathews*, 366 Md. 660, 667 n. 6, 785 A.2d 708, 712 n. 6 (2001) (defining judicial estoppel as "a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action").

In *Kramer v. Globe Brewing Co.*, 175 Md. 461, 2 A.2d 634 (1938), the doctrine of judicial estoppel was invoked against Globe Brewing Company by Kramer, an individual who was injured while assisting an employee of Globe Brewing. Globe Brewing, in an answer to a complaint in tort, alleged that

workmen's compensation was Kramer's exclusive remedy, which prompted Kramer to obtain a voluntary dismissal without prejudice of his tort action and to file a worker's compensation action. In the worker's compensation action, however, Globe Brewing proffered testimony that Kramer was *not* its employee at the time of the accident, to which Kramer objected on the grounds that Globe Brewing was estopped by its prior allegations of exclusivity of worker's compensation remedies. We concluded "that under some circumstances admissions in pleadings may be explained," while "under other circumstances, in the interest of sound public policy, regardless of their truth or falsity, such admissions estop the pleader from denying their force and effect." *Id.* at 469, 2 A.2d at 637. We applied judicial estoppel to preclude Globe Brewing from asserting that Kramer was not its employee because Kramer was caused to "change his position to his own detriment, and to the ultimate advantage of [Globe Brewing]" by Globe Brewing's previous allegation of worker's compensation exclusivity. *Id.* We further noted,

> [t]here is no indication in the record before us that [Globe Brewing's] special plea was hastily filed by the attorneys who represented [Globe Brewing] in the common law action, and, to the contrary, the reasonable inference is that it was filed deliberately and with the full knowledge of its plain meaning and effect on the part of the duly accredited officials of [Globe Brewing].

*Id.* at 472, 2 A.2d at 638, and concluded that,

> it would, in our opinion, be an injustice to [Kramer], in the present suit, to permit [Globe Brewing], after having availed itself of an affirmative defense in the prior suit, to appear in a subsequent proceeding involving the same matter of controversy between the same parties, and deny the facts asserted by it, or on its behalf, in the special plea.

*Id.* at 471, 2 A.2d at 638. *See also Underwood–Gary,* 366 Md. at 667 n. 6, 785 A.2d at 712 n. 6; *WinMark Ltd. P'ship v. Miles & Stockbridge,* 345 Md. 614, 620, 693 A.2d 824, 826–27 (1997); *Walker v. Acting Director, Dept. of Forests & Parks,*

284 Md. 357, 366, 396 A.2d 262, 267 (1979); *Van Royen v. Lacey*, 266 Md. 649, 651–52, 296 A.2d 426, 427–28 (1972).

In *Pittman v. Atlantic Realty Co.*, 359 Md. 513, 754 A.2d 1030 (2000), we explicated the prerequisites for the application of the doctrine of judicial estoppel to be applicable in a given case:

> (1) [T]he assertion of a factual 'position inconsistent with that taken in prior litigation;' (2) that the 'prior inconsistent position must have been accepted by the court; and' (3) that 'the party sought to be estopped must intentionally have misled the court to gain **unfair advantage.**'

*Id.* at 529 n. 9, 754 A.2d at 1038–39 n. 9 (emphasis added).

In this case, Mr. Berrett alleged in his verified petitions for a guardian of the person and property of Charlotte Berrett that Charlotte Berrett possessed an ownership interest in 4305 Gallatin Street and that he and his four siblings were interested persons in those proceedings. Those allegations are not inconsistent with his assertion in his law suit against Standard Fire that he possessed an economic interest in 4305 Gallatin Street, and thereby an insurable interest, at the time of the fire because both could exist concurrently. Also, his earlier assertion of his mother's ownership interest was not to his advantage in the guardianship proceedings; he did not gain an unfair advantage by his averments.

We therefore conclude that, because the sale of 4305 Gallatin Street was not complete at the time of the fire, Mr. Berrett owned an economic interest, and therefore an insurable interest, in the property at the time of the loss. Mr. Berrett also did not litigate the nature of his interest during the guardianship proceedings for his mother, Charlotte Berrett, and therefore the doctrine of defensive, non-mutual estoppel does not apply. Finally, Mr. Berrett is not judicially estopped by his representations to the court in his verified petitions for a guardian of Charlotte Berrett. We therefore affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS IN THIS COURT AND THE COURT**

OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.

RAKER, J., Dissents.

RAKER, Judge, dissenting:

I would reverse the judgment of the Court of Special Appeals and affirm, on grounds of judicial estoppel, the judgment of the Circuit Court for Baltimore City granting summary judgment in favor of petitioner. The position respondent took in the earlier guardianship proceeding and subsequent litigation challenging the results of that proceeding is inconsistent with the position he asserts in this action. Under the doctrine of judicial estoppel, he cannot do so and should be barred from claiming that he possessed a vested remainder in the property at issue.

Judicial estoppel has been defined as "a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action." *Underwood–Gary v. Mathews,* 366 Md. 660, 667 n. 6, 785 A.2d 708, 712 n. 6 (2001). This Court has explained that the policy underlying judicial estoppel is to preserve the integrity of the judicial system. *WinMark v. Miles & Stockbridge,* 345 Md. 614, 628, 693 A.2d 824, 830 (1997). We stated as follows:

> "The policy underlying judicial estoppel and underlying the clean hands doctrine is the same. 'The clean hands doctrine is not applied for the protection of the parties nor as a punishment to the wrongdoer; rather, the doctrine is intended to protect the courts from having to endorse or reward inequitable conduct.'"

*Id.* (quoting *Adams v. Manown,* 328 Md. 463, 474–75, 615 A.2d 611, 616 (1992)).

On March 22, 2000, respondent filed in the Circuit Court for Prince George's County a "Complaint for Guardianship of the Person and Property of Charlotte Berrett," *In the Matter of Charlotte Berrett,* Case No. CAE 00–06597, in which he stated under oath that his mother "owns two parcels of real estate

commonly known as 4305 Gallatin Street, Hyattsville, Maryland 20781 and 2304 Fordham Street, Hyattsville, Maryland 20783." These representations were repeated in two subsequent petitions he filed in the Circuit Court. In each of these actions, respondent never mentioned or identified any interest he may have held in these properties.

A critical representation in a guardianship of the property proceeding is the list of any property owned by the subject of the petition and the nature of the interest owned. Maryland Rule 10–301 addresses the petition for a guardian over the property of alleged disabled persons and minors. Section 301(c)(8) and (10) of Rule 10–301 require that the petition contain information as to the nature, value, and location of the property of the alleged disabled person, and to the extent known or reasonably ascertainable, the name, address, telephone number, and nature of the interest of all interested persons and all others exercising any control over the property of the estate. Respondent drafted the deed related to the property at issue, and he knew of its existence during these proceedings. The guardianship judge, Judge G.R. Hovey Johnson, necessarily relied upon respondent's representation that his mother *owned* the property. Respondent never listed in the petition any purported interest he may have held in the property. The majority misreads the petition when it states that "Mr. Berrett alleged in his verified petition . . . that Charlotte Berrett possessed an ownership interest in 4305 Gallatin Street." Maj. op. at 464, 910 A.2d at 1087. Respondent did not merely suggest "an ownership interest." Respondent averred that "[Charlotte] Berrett *owns* two parcels of real estate . . ."

In the present matter, the Circuit Court, Judge Joseph H.H. Kaplan, granted summary judgment in favor of petitioner. He stated as follows:

"As I indicated, counsel, I reviewed the file before today's proceeding and it seems to the Court and I so find that [Standard Fire] is entitled to have their motion for summary judgment granted for the reasons stated in their memorandum in support of the motion that Mr. Berrett is collaterally estopped from claiming an interest in the prop-

erty. In his testimony before Hovey Johnson in Prince George's County, he fully acknowledges several times throughout the proceedings, the guardianship proceedings, etc., that his mother was the owner of the property. There is nothing that says he's the owner or has any interest in the property other than an unrecorded deed which didn't give him a remainder interest, it gave him a fee simple interest. He's not claiming that he has a fee simple, had a fee simple interest in the property. He's claiming that he had, his mother had a life estate, there's no document that sets up a life estate and that he had the remainder interest. So I think that he's testified under oath too many times that his mother was the owner of the property to now come in and say no, he was the owner of the property and that's his insurable interest. So I think he's barred by collateral estoppel and estoppel by admission."

Judge Kaplan was correct when he found that respondent's previous statements estopped him from claiming a proprietary interest in the property in the present case.

The Court of Special Appeals' basis for excusing respondent's inconsistent position is not persuasive. The fact that Berrett may not have been represented by counsel should make no difference in the analysis. An unrepresented layperson is held to the same standard as a litigant who is represented by counsel; neither litigant may take an inconsistent position. Moreover, it appears that Berrett *was* represented by counsel when the guardianship petition was filed and the property owned by his mother was listed in the petition. Finally, Berrett apparently studied law and received a juris doctor degree in 1992.

Judicial estoppel should bar respondent from claiming that he possessed an interest over the property in question.